The opinion of the court was delivered by
Watkins, J.
From an unqualified verdict, on an indictment for murder, and sentence of death, the two defendants — John Jones and Henry Simmons — prosecute this appeal, relying on several bills of exceptions which they reserved during the progress of the trial.
I.
As it is officially stated by the trial judge in his assignment of reasons for his rulings, that bills of exception one to six, inclusive, being reserved by counsel representing the defendant John Jones, and not by counsel representing Henry Simmons, the testimony adduced and about which controversy arose — the dying declarations of James K. Bond, deceased — had no application to the last named person; and that the subjects matter of same were germane, and therefore considered them together, we will follow the precedent and do likewise.
In bill number one the statement is made that objection was urged to the admissibility of the testimony of a State’s witness introduced for the purpose of laying the basis for the introduction of the dying declarations of James K. Bond, who is designated in the indictment as the party who was murdered by the defendants; and the judge was requested to allow the defendant to have same reduced to writing, and reserved objection to his refusal to do so.
The remaining five of the same series are of the same tenor.
The judge says:
“ It will be noticed that these bills, two, four and six, contain the facts quoted by counsel themselves, and that portion of the evidence relating to the basis is embraced within quotation marks (“-”) made by counsel.
“This is as true and authentic evidence as the court can require, upon the question of proper foundation. The court is therefore in possession of the facts quoad these bills, and the simple question re *1526 mains as to whether the court acted properly in admitting the dying declaration.”
He further says in relation to bills one, three and five:
'“ If I understand correctly the doctrine established in 41 An. 143, it is only when there exists a disagreement between counsel and the court as to what the evidence is, that the court should have it trans-scribed by the clerk. When there exists no such disagreement as in the present case, it is a vain and useless consumption of time, which the court should not require.
“ Doubtless counsel took the evidence down as it fell from the lips of the witnesses, as the evidence which he transcribes in his bills of exception is identical with that appearing upon the notes which I kept of the testimony.”
And as if to more fully show that he acted upon the evidence of those witnesses, he says further, that it, “ in connection with the physical facts and circumstances which surrounded the case, satisfied me that the dying declaration of the deceased was made while he was in the full possession of his mental faculties, and under consciousness that he had but a very short time to live.” ■
We have examined with care the case cited by the court, and the decision upon which counsel for the defendant, Jones, evidently relies, State vs. Seiley, 41 An. 143, and find that it substantially bears out the conclusion of the trial judge, for it says:
“We have, on the partof defendant, a demand that the testimony of witnesses on this collateral issue be reduced to writing as detailed to them, for the express purpose of bringing it up for review on appeal, in order to have a question of law determined.
“We have, on the part of the trial judge, a distinct and emphatic refusal of the defendant’s request, because his counsel had enjoyed the opportunity of having them incorporated in a bill of exceptions .
“The judge did not rest his conclusions on the adequacy of that statement, but at once proceeded to make a different version of the facts, and rested his conclusions upon it. In so doing he clearly demonstrated the fact that, if the defendant’s counsel did have ample opportunity to incorporate the facts in a bill of exceptions, it was, at the same time, rendered invaluable to him by his own, possessing as it does the weight of his authoritative sanction.
“ Under this state of facts the accused appears in this court, prac *1527 tically deprived of the evidence on which he solely depends, and is necessitated to rely upon that to which the judge has certified.”
But how widely differentia the situation of this case. The defendant’s counsel embodies in his bill of exceptions the testimony of which he makes complaint; and the judge accepts his statement, and says it corresponds exactly with the notes of evidence he made during the progress of the trial. State vs. McCarthy, 44 An. 323; State vs. Nash and Barnett, 46 An. 194.
It is quite impossible to see in what manner the defendant has been injured by the judge’s declination to permit the evidence to be reduced to writing and incorporated in the transcripts. He has had, and will have, the full benefit of it in this court.
But, as we understand counsel’s argument, he complains that at the time the objection was urged and the ruling was made no evidence had been introduced, and that, under the decision, in the Seiley case, he had a legal right to have the evidence reduced to writing, and that we must take up the bills of exception seriatim and decide them in their order; and that proceeding in that order, we must hold the judge’s ruling erroneous.
But we must take the case as we find it, and we find all the bills of exception occurring in rotation, with but one answer of the judge to all of them.
Presumably all of them^were filed at the same time, and examined by the judge and decided at the same time. Indeed, they all bear the same date of filing, June 3, 1895, and that date is contemporaneous with the judge’s ruling.
Conceding counsel’s right to have had the bills signed and the judge’s reasons assigned, at the dates of his rulings, yet we can not doubt the judge’s authority to act as he did under the circumstances related; and, considering them, we feel it to be our duty to decide accordingly.
As the defendant has had the full benefit of the testimony he relied upon, we are not justified in vacating his ruling’.
II.
The substance of the testimony which appertains to the admissibility of the dying declarations, as shown by the defendant’s bills of exceptions two, four and six, is that an offer was made to send for a doctor, and the deceased’replied that “ There is no use; I’ll *1528 be dead before he gets here;” and that he soon after died — that is to say, within an hour.
The question is, therefore, whether statements made by the deceased concerning defendant Jones’ complicity in his homicide, at the time, is competent evidence against him.
In State vs. Keenan, 38 An. 660, this court said: “Dying declarations are those made under a consciousness of impending death, which, however, the defendant need not express in direct terms. His bodily condition and appearance, his conduct and language, as well as statements made to him by his attendants, may be considered, and his consciousness thence inferred. State vs. Scott, 12 An. 274.
“We do not conceive it to have been necessary that the deceased should have said that he believed he would die immediately, but regard it sufficient, if the facts detailed were such as to indicate that the deceased was conscious, at the time of making his declaration, of his approaching dissolution.
“ To render such declarations receivable in evidence, the deceased need not have been, at the time, in articulo mortis. It was only necessary that same should have been made under a sense of impending dissolution which soon thereafter occurred.
“To this sense of approaching death the law attaches the solemnity of an oath, and impresses upon'a statement under it the character of evidence.” Vide State vs. Judge Spencer, 30 An. 365; State vs. Daniel, 31 An. 95; State vs. Trivos, 32 An. 1086; State vs. Molisse, 36 An. 920; State vs. Newhouse, 39 An. 862; Wharton’s Crim. Ev., Sec. 282.
We are of opinion that the evidence quoted fulfils the conditions requisite to the admissibility of the declarations of the deceased, in evidence, as dying declarations.
But defendant’s counsel further insists that there is nothing in the record to show that the statements of the deceased were contemporaneously made. It is evident to our minds that the statement itself furnishes complete evidence of that fact, for it was made during the hour that intervened between the homicidal assault and his death.
III.
The district attorney having introduced a witness and proposed to prove by him certain alleged admissions of the defendant, Jones, his counsel moved the court to have the testimony reduced to writing, *1529 on the ground that it was necessary that a basis should be first laid for its introduction; and this request having been refused by the judge, he retained bill of exceptions number seven. And when, thereafter, the district attorney proceeded to interrogate said witness with regard to the defendant Jones’ admission, his counsel urged the further objection that the testimony was inadmissible, until a sufficient and proper basis had been first laid, and this objection having been overruled by the judge, he retained the bill of exceptions number eight.
As in the previous instance, the judge coupled these two bills together in making the assignment of his reasons; and; thereto, he appended the substance of the witness’ statement.
It is to the effect that Jones said to the witness previous to the homicide, on an occasion when the deceased was passing by, that deceased did not like him, and that he did not like deceased, “ and this parish is too small for us both.”
The judge then states:
“The evidence was taken down by the court, and not by the clerk, as requested by counsel. There was no question of foundation for the admission of such evidence. It was a fact like any other that stood independent and alone, forming only a link in the chain of evidence. As a declaration made before the homicide, it could be admitted to show motive only, and as such it was admissible.
“Now, if the case had resulted differently, and Bond had killed Jones instead of Jones having killed Bond, and such evidence had been offered as communicated threats, it would have been necessary to show a hostile demonstration as a condition precedent to the admissibility of such threats, but as antecedent declarations show animus, they need no foundation to rest on.”
Our learned brother of the lower court has so completely and succinctly defined the legal principle involved in the two bills of exception that there is absolutely nothing further to add, and we approve of his ruling unqualifiedly. There is nothing in the Seiley case which is applicable to the issue raised. There is no question of law raised and to be decided by this court. The two bills present simply a question of the admissibility of evidence appertaining to the motive of the accused; i. e., his premeditation or malice aforethought. It was clearly within the province of the jury to decide that question and not for the court.
*1530 IV.
As bill of exceptions number thirteen, which was reserved by the counsel for defendant, Simmons, relates to the same subject matter, it may as well be disposed of in this connection.
He objected to the statement of a State’s witness, for reasons similar to those urged by counsel for Jones, and for like reason the court overruled it.
The statement of the witness was as follows, viz.:
“Henry Simmons told me on the day previous to the killing that he had a difficulty with the deceased. He said that the deceased had collared' him, Simmons. He said that no man could collar him and live. (That) the parish was not big enough for both.”
The judge assigned as his reason for denying defendant’s application, that “ the above were antecedent declarations, and were admitted to show motive only. No foundation was necessary to their introduction, and therefore there was nothing to open a note of evidence for. I refer to my reasons to bills 7 and 8, as applicable here.”
■For the reasons we have already assigned, we think the trial judge decided correctly, and his rulin? is approved.
Bill of exceptions number nine was reserved by the counsel of defendant, Simmons, to the admission of the testimony of a State’s witness, with regard to an alleged confession which was made by Simmons while he was in jail, “it not appearing that the confession was free and voluntary, and admissible in evidence;” and counsel for defendant moved the court to have the testimony as to the admissibility of the confession reduced to writing.
The judge states that there was no conflict between counsel and himself as to the facts testified to by the witness, referring to the testimony that is appended to bill of exceptions number ten.
Bill of exceptions number ten was reserved by counsel for defendant, Simmons, to the ruling of the judge in admitting the testimony of the aforesaid witness, on the ground that said alleged confession “ was made under circumstances of great; excitement and nervousness (when) accused was not in a proper (frame) of mind to make a free and voluntary confession.”
It appears that the witness was the jailor, and, as such, had the accused in his custody.
His statement is as follows, viz.:
*1531 “A day or two after they were in jail Simmons made a confession to him, without offering any inducement or makingj]any threat to him. He was in a cell with other prisoners, and was not chained or bound in any way. The accused looked greatly excited and very nervous, but that was due to no offer of violence or threats from any source whatever, as I was at the time the only one in jail, and unarmed.
$i< ^ ‡ ‡ ^ ‡
“He told me that ‘ he had fired the first shot, but had missed Bond and John Jones had killed him.’'”
The judge says qf this statement that it satisfied his mind “that the confession was voluntary and free, and not superinduced by undue influence,” and he admitted it with respect to Simmons only.
It is manifest that the confession of Simmons was voluntary, and uninfluenced by any threat or duress of any kind; and it was clearly admissible.
VI.
Bill of exceptions number eleven relates the circumstances of the judge’s declination to permit the defendant, Simmons, to prove different statements he had made with regard to the homicide, at variance with the statements of the jailer — his objection being that it was but the supplement of the alleged confession, and explanatory thereof.
The judge says he did not decline to hear the statement, but that the witness was permitted to make answer to the question propounded, and that his answer was as follows, viz.: “Yes; he (Simmons) did, some eight or ten days after this confession, make other statements tome;” and that thereupon the district attorney objected to these statements being admitted “ because they were self-serving declarations.”
He states that, iu his opinion, this objection was well grounded; but he says that “if these declarations had been made at the time that the confession was made, then they should have been admitted as part of said confession; but having been made long subsequent thereto they were clearly objectionable, and they were, therefore, excluded.”
In is quite evident that these statements constituted no part of the confession, and are inadmissible as part of the res gestee.
The judge’s reasons are conclusive.
*1532 VII.
Bill of exceptions number twelve appertains bo the testimony of a witness for the State who was introduced and testified in rebuttal, and contradicted the statement of the accused on an important and material point.
The contention of the defendant is that all the witnesses — those for the State as well as those for the accused — had been by order of the court marshaled and put under rule, and removed from the court house during the introduction of the evidence, and that witness whose testimony was objected to was present and heard all the testimony, and should not have been permitted to testify. The judge states that it appeared from the evidence, as well as the proceedings, that this person had not been summoned or named as a witness at the time of the marshaling of the witnesses, and he was not, consequently, placed under rule. That the district attorney had made the discovery, on the spur of the moment, that he could contradict the statement of the accused by this person, and that he thought it legal and proper, under this state of facts, for him to give his testimony.
Counsel for the accused have cited no authority in support of that contention; indeed they admit that “the facts are different from any previously passed upon.” They further say in their brief that “ we do not dispute the discretionary right of the court to exclude or not witnesses from the court room; but when the order has been given, it is fatal error to permit a witness who has heard all the witnesses to testify.”
That may be perfectly true; but it does not cover this case — the witness having been discovered after the testimony had been administered.
In State vs. Hagan, 45 An. 839, it was held to be “a question for the lower court, whether the conduct of a witness in remaining in court in violation of an order directing the separation of the witnesses, is ground for a new trial;” and it seems logical that it should be equally within the discretion of the lower court whether he could legally testify. The question is one which appertains, principally, to the regimen of the court, and to disobedience of its orders. If, as in this case, no fraud has been attempted, no injury has been suffered, and no disrespect intended, by the witness or the party introducing him, there is no apparent disqualification of the witness.
*1533 The trial judge exercised his sound judicial discretion in the premises, and we are not prepared, from anything that appears in the record, to say that he exercised it unwarrantably or arbitrarily.
This completes the examination of all the bills of exception, and we feel constrained to say that not one of them has been well taken, and we must affirm the correctness of the verdict and judgment defendants have appealed from.
Judgment affirmed.