State vs. Kraemer.

---

No. 12,412.

STATE OF LOUISIANA vs. NICHOLAS KRAEMER.

ON RULE.

The court again affirms that on the question of the exceptions reserved by the counsel of the accused, the bills brought up and the statement of the trial judge must control us on the appeal. State vs. Romero, 5 An. 24; State vs. Lacombet 12 An. 195.

ON THE MERITS.

If a person being in possession of his mental faculties voluntarily gets into a fit of drunkenness, and during such drunkenness commits a homicide under a diseased mental condition occasioned by the same, he can not set up said diseased mental condition as an excuse for his act.

In order that a man should stand excused for a homicide committed during drunkenness, and while in a diseased mental condition, the diseased mental condition which excuses the homicide should be able to be successfully urged as an excuse for the act of getting drunk.

State vs. Kraemer.

It is as possible for an insane man to get drunk as a sane man. The addition of drunkenness to insanity does not withdraw from such person the protection due to insanity, but when such a person commits a homicide during drunkenness reliance must be placed upon the original insanity itself, not the subsequent drunkenness.

APPEAL from the Criminal District Court for the Parish of Orleans. *Baker, J.*

*M. J. Cunningham*, Attorney General, and *R. H. Marr*, District Attorney, for Plaintiff, Appellee.

*Paul W. Mount* and *James Wilkinson* for Defendant, Appellant.

Submitted on rule for production of instructions February 15, 1897.
Opinion handed down March 1, 1897.

ON RULE.

Submitted on briefs March 6, 1897.
Opinion handed down March 15, 1897.

The opinion of the court was delivered by

MILLER, J. The relator seeks by this application to compel the clerk of the Criminal District Court to transmit the request made of the lower court on behalf of the accused, to give certain instructions to the jury that tried him. The relator's petition alleges that these instructions were asked, refused and exceptions reserved to the refusal.

The return of the clerk, in which the judge joins, is that but one bill was reserved, which we find in the record.

The judge states besides that although no bill was reserved other than that signed, he offered to counsel to sign a bill reserving all the exceptions the counsel claims to have reserved, but he did not avail of this offer. We find in the record but one bill and the statement of the judge, that bill exhibits the only point reserved.

We have often had occasion to observe that we must be guided on questions of the character raised here, by the bills we find in the

State vs. Kraemer.

record and the statement of the judge.    We must apply that rule in this case.

It is therefore ordered, adjudged and decreed that the relator's application be denied and our previous order on his petition be set aside.

## ON THE MERITS.

NICHOLLS, C. J.    Defendant having been indicted for the murder of Mary Cooney and the jury which tried him having returned a verdict of guilty without capital punishment, he was sentenced by the court to hard labor for life in the State penitentiary.    From that sentence he has appealed.

He relies upon the following bill of exception:

" Be it remembered that on the trial of this cause a number of witnesses having testified before the jury that the accused Nicholas Kraemer had from his boyhood to the present time been considered by his associates as light minded and had been known by the soubriquet of ' Crazy Nick;' that the drinking of liquor seemed to put him in a frenzy; that he had previous to the time of the homicide been a steady drinker and on the morning of the homicide he had come home after a night's ·absence at 8:30 A. M., terribly intoxicated; that he had called for his Sunday clothes and taking them into the yard chopped them up with a hatchet into little pieces muttering, and when deceased tried to get him to desist, threatened her life with a hatchet; that it was further shown that three hours later he was seen in the back yard of a grocery near by shrieking; that at about the time of the homicide, 12:30 P. M., he returned to the house walking straight and went in to sit down to dinner with the deceased alone, from which place he came out and was seen bareheaded walking rapidly and straight away from place where deceased had been left with her throat cut and that when arrested was walking erectly with a staring look in his eyes; that he had taken a ten-year-old boy's hat and put it on his head and when questioned, refused to answer, and it having been urged on his behalf by his counsel on the trial that if the killing of the deceased had been done by accused, it was done:

" 1. Because he was insane and was not responsible for his acts.

" 2. Because such insanity, though possibly slight, was enhanced and made dangerous and homicidal by the use of liquor, which acted as a

poison to the mental disease of said accused, and that there was no motive for said act.

" 3. Because all the symptoms described in said testimony as to accused showed that such insanity or low order of intelligence was aggravated into homicidal mania by *delirium tremens*, from which he was suffering at the time it is claimed he killed Mrs. Cooney, the deceased.

" And on the part of the defence, counsel having requested the court to charge the jury as per the written request set forward and numbered and made a part of this bill of exceptions, and the court having failed to charge Nos. —— in said charge requested, and the said court moreover having failed to charge as to request Nos. ——, and the said court having moreover charged that any temporary insanity the result of drunkenness will not excuse crime, and that only permauent insanity the result of drunkenness will excuse crime, or in words of similar import or effect, and the said counsel for cacused having thereupon, before the jury retired, taken the within bill of exceptions:

" 1. To the failure of the court to charge as requested.

" 2. To the refusal of the court to charge as requested.

" 3. To the charge of the court to the jury as herein stated.

" Counsel for the accused now having submitted this bill of exceptions to the District Attorney, now tenders the same to this Honorable Court for its approval and signature.

" By the Court. The jury were charged fully as to the law of insanity, whether brought about by intoxication or other causes. The jury were instructed that temporary insanity produced by undue indulgeuce in spirituous liquors furnished no excuse for homicide or other crime, but that fixed insanity did. As to special request No. 6, they were further instructed that *delirium tremens*, or fixed insanity, formed an excuse for the act provided the party was not intoxicated at the time. My idea of the law is, that if the mental condition of the accused is the remote consequence of antecedent drunkenness, then he is not responsible, but that if his act takes place in a fit of intoxication, and is the immediate result of it, then he is. In my charge I endeavored to give the jury all the law applicable to the case."

The sixth special charge referred to in the bill of exception reads as follows:

49

" *Delirium tremens*, although the result or consequence of continual drunkenness, is insanity or a diseased state of mind, and effects responsibility for crime in the same way as insanity produced by any other cause. *Delirium tremens* like insanity, if it deprives a man of capacity of knowing right from wrong, saves him from any criminal responsibility for his acts."

The charge given by the court is not in the record, so that we can not test the propriety of a particular portion of it by reference to it. The only way in which we come to a knowledge of any part of it is through the statement made by the court itself at the foot of the bill of exceptions.

The recitals of the bill as to what the testimony in the case showed afford us no aid in passing upon the question before us, as the testimony was directed to the establishment of issues of fact, the conclusions as to which were to be disposed of and were disposed of by the jury. What those conclusions were, upon the different issues raised, we do not know. We know only the result reached in their verdict. Whether the accused, as a fact, was at the time of the homicide insane or not, we do not know, nor do we know, if insane, whether he was at that time suffering from *delirium tremens*. The instructions asked seemed to have assumed that the nature, causes and consequences of *delirium tremens* were fixed facts, known to and to be announced by the court to the jury, and to have further assumed as a fact that accused at the time of the homicide was under its influence and effects. Those matters were matters under expert and other evidence in the case, to be determined by the jury.

The doctrine with reference to drunkenness, in relation to crime, is thus stated by Bishop:

" If a man intending one wrong accomplishes another, he is punishable for what is done, though not intended except where a specific intent in distinction from mere general malevolence or carelessness is an essential element in the particular crime. The law deems it wrong for a man to cloud his mind or excite it to evil action by the use of intoxicating drinks; and one who does this, then, moved by the liquor while too drunk to know what he is about, performs' what is ordinarily criminal, subjects himself to punishment; for the wrongful intent to drink coalesces with the wrongful act done while drunk and makes the act complete " (Bishop's Crim. Law, 6th Edition, Chapter XXVII, par. 397).

The common law has always regarded drunkenness as being in a certain sense criminal. Since, therefore, a man who intends one wrong and does another of the indictable sort is punishable even when the wrong intended would not be so if actually done, voluntary. drunkenness supplies in ordinary cases the criminal intent. Thus when a man voluntarily becomes drunk that is the wrongful intent, and if, while too far gone to have any further intent, he does a wrongful act, the intent to drink coalesces with the act done while drunk, and for this combination of act and intent he is liable criminally. It is therefore a legal doctrine, applicable in ordinary cases, that voluntary drunkenness furnishes no excuse for crime committed under its influence. It is so even when the intoxication is so extreme as to make the person unconscious of what he is doing, or to create a temporary insanity (Bishop, pars. 399 and 400). The author referring to limitations of the doctrine says:

" The law holds men responsible for the immediate consequences of their acts, but not ordinarily so for those more remote. If, therefore, one drinks so deeply or is so affected by the liquor that for the occasion he is oblivious or insane, he is still punishable for what of evil he does under the influence of the voluntary drunkenness. But if the habit of drinking has created a fixed frenzy or insanity, whether permanent or intermittent, as for instance *delirum tremens*, it is the same as if produced by any other cause excusing the act. For whenever a man loses his understanding as a settled condition he is entitled to legal protection equally, whether the loss be occasioned by his own misconduct or by the dispensation of Providence " (Bishop, par. 406).

Referring to cases requiring specific intent the author says:

" It is plain that when the law requires as it does in some offences a specific intent in distinction from mere general malevolence to render a person guilty, the intent to drink and drunkenness following can not supply this specific intent. Thus drunkenness as we have seen does not incapacitate one to commit either murder or manslaughter at the common law; because to constitute either the specific intent to take life need not exist, but general malevolence is sufficient. But where murder is divided by statute into two degrees and to constitute it in the first degree, there must be the specific intent to take life—this specific intent does not, in fact, exist, and the murder is not in this degree, where one not meaning

to commit a homicide becomes so drunk as to become incapable of intending to do it; and then in this condition kills a man. In such a case the courts hold that the offence of murder is only in the second degree. This doctrine does not render it impossible for one to commit murder in the first degree while drunk. If he resolves to kill another, then drinks to intoxication and then kills him, the murder is of the first degree, because in this case he did specifically intend to take life. And a man though drunk, may not be so drunk as to exclude the particular intent. Drunkenness short of the extreme point, therefore, will not reduce the murder to the second degree." Bishop, pars. 410, 401.

" There are cases not requiring a specific intent where the precise state of the prisoner's mind is under special circumstances important. Not conflicting with what has been previously laid down, it is pretty well settled that there are circumstances on which evidence of intoxication may be properly received to reduce a homicide to manslaughter. Some judges seem not willingly to yield this point, but the better opinion is that if, for instance, the question is whether the killing arose from a provocation which was given at the time, or from previous malice, evidence of the prisoner's having been too drunk to carry malice in his heart may be admitted. And the consideration is not to be withheld from the jury that his drunkenness may render more weighty the presumption of his having yielded to the provocation rather than to the previous malice, because of the fact that the passions of a drunken man are more easily aroused than those of a sober one. This doctrine differs from the untenable one that drunkenness excuses or palliates passion or malice. So intoxication is relevant to the question whether expressions used by a prisoner sprang from a deliberate evil purpose, or were the mere idle words of a drunken man. This evidence, moreover, assists in determining whether a defendant acted under the belief that his property or person was about to be attacked."

In Haile vs. The State, 11 Humph. 154, it was said that when the question was what was the actual mental state of the perpetrator at the time the act was done, whether it was one of deliberation and premeditation, then it was competent to show any degree of intoxication that might exist, in order that the jury might judge, in view of such intoxication, in connection with all the other facts and circumstances, whether the act was premeditatedly and deliberately done.

State vs. Kraemer.

The court, however, said that when the question was whether drunkenness could be taken into consideration in determining whether a party be guilty of murder in the second degree, the answer must be that it can not. It was further said that the law implied malice from the manner in which the killing was done or the weapon with which the blow was stricken. In such cases it is murder, though the perpetrator was drunk. And no degree of drunkenness will excuse in such case, unless by means of drunkenness an habitual or fixed madness is caused.

"The law in such cases does not seek to ascertain the actual state of the perpetrator's mind, for the fact from which malice is implied having been proved, the law presumes its existence and proof in opposition to this presumption is irrelevant and inadmissible. Hence, a party can not show that he was so drunk as not to be capable of entertaining a malicious feeling. The conclusion of law is against him."

In a note to Bishop, par. 400, Lord Coke is quoted as saying that although he who is drunk is for the time *non compos mentis*, yet this drunkenness did not extenuate his act or offence, nor turn to his avail, but it is a great offence in itself, and therefore aggravates his offence. The author adds that it is not, however, strictly true that drunkenness aggravates a crime; it simply furnishes no excuse (quoting McIntyre vs. People, 38 Ill. 514).

Drunkenness in its relation to crimes has been considered a number of times by this court. Among the cases bearing upon the subject, we note State vs. Mullen, 14 An. 570; State vs. Coleman, 27 An. 692; State vs. Watson, 31 An. 379; State vs. Willis, 43 An. 407; State vs. Ashley, 45 An. 1036; State vs. Hill, 46 An. 27.

We have given careful consideration to the argument in behalf of defendant by his counsel and have reached the conclusion that tested by the principles laid down in the commentators, the decisions of courts other than those of Louisiana and by our jurisprudence defendant has shown no proper case for relief.

We think that the jury was substantially instructed that when a prisoner urges that he should be held "excused" from criminality for a homicide which he had committed (we use that term in contradistinction to a plea for reduction of the grade of criminality charged) by reason of his having been laboring under "*delirium tremens*" at the time of the commission of the act and that he was

therefore unable to know, realize, or appreciate, what he was doing, the *delirium tremens* must be shown to have antedated the fit of drunkenness, during the existence of which the act was committed.

In other words, that if a person being in possession of his mental faculties, voluntarily gets into a fit of drunkenness, and during such drunkenness commits a homicide under a diseased mental condition occasioned by the same, he can not set up such diseased mental condition as an excuse for his act; that in order that a man should stand excused for a homicide committed during drunkenness and while in a diseased mental condition, the diseased mental condition which excuses the homicide should be able to be successfully urged as an excuse for the act of getting drunk.

It is a well-known fact that men who, at the time of voluntarily getting drunk are in full possession of their mental faculties, and who are in the same condition when the fit of intoxication passes away, frequently commit acts during the drunkenness of which they have absolutely no recollection on regaining a condition of sobriety— acts committed under a substantial condition of temporary insanity. All writers agree that a homicide committed under such conditions does not stand excused. The effect of drunkenness upon the mind and upon men's actions when under the full influence of liquor, are facts known to every one, and it is as much the duty of men to abstain from placing themselves in a condition from which no such danger to others is to be apprehended as it is for men to abstain from firing into a crowd or doing any other act likely to be attended with dangerous or fatal consequences. It would open the door wide to the commission of crime were we to justify the commission of a homicide committed under a condition of mind designated as *delirium tremens*, when it was, in all probability, nothing more nor less than the condition of mind usually resulting from a condition of thorough drunkenness.

It would be utterly impossible to distinguish between the two conditions of mind, if, in reality, there be a difference between the two.

It is, of course, as possible for an insane man to get drunk as a sane one. The addition of drunkenness to insanity does not withdraw from such person the protection due to insanity, but when such a person commits a homicide during drunkenness reliance must be placed upon the original insanity itself, not upon the subsequent drunkenness. We are of opinion the judgment should be affirmed.

We have no different degrees of murder in this State, but parties accused get all the benefit which would arise from grading the crime, in the flexibility given to the punishment which is to be meted out in any given case, by allowing the jury, under a charge of murder, to bring in a verdict of guilty without capital punishment. The jury are enabled to give to the accused the benefit of any extenuating or mitigating circumstances which would save them from suffering the extreme penalty of the law. We gather from the record that the deceased in this case came to her death by having her throat cut by the defendant. The jury evidently gave some effect to the condition of drunkenness which, we infer, must have been established on the trial.

The judgment is affirmed.