## No. 12,857.

### STATE OF LOUISIANA VS. JUSTIN CANCIENNE.

Defendant indicted for the murder of his wife asked the following charge:

" If the jury find from the evidence that the accused discovered his wife in such a position with Delatte as to convince any reasonable man that they were in the act of adultery, and that he was so incensed and outraged by the sight that he lost all control of his reason, and acting under the overpowering influence produced by the sight of his shame and humiliation, he then and there drew his pistol and fired, and after his pistol was empty, he immediately drew a razor and inflicted a wound upon his wife, from which she died, the accused is not responsible for his acts, and the jury must acquit "

The court correctly refused this charge, which asked, under the facts stated, not a reduction of the crime from murder to manslaughter, but a "justification" of the husband's acts entitling him to an "acquittal." A husband who, detecting his wife at his own home, in the act of adultery, kills her on the spot, provoked by the wrong, though not guilty of " murder," does not stand " justified" in his act. The homicide is " manslaughter."

Where a husband, on entering his home and finding his wife in the act of adultery, shoots at the wife's paramour, or at her, or at both indiscriminately, whereupon, the wife, under the evidence, seizes and holds her husband by the arm, informing the paramour that she had done so, and calling on him to come and they would kill him, the court should permit the husband to introduce testimony as to the relative strength of his wife and himself in order to lay the foundation for a reasonable belief on his part that his life was placed in danger by her act, and for the purpose of justifying as in " self-defence" his cutting her to detach her hold. The fact that the husband did not stand "justified " in his original act of shooting at the wife and her paramour, did not cut him off under the circumstances stated from invoking the doctrine of " self-defence," when in one of the after phases of the difficulty his life became endangered by the act of the wife. The doctrine of " aggressorship" in respect generally to that of " self-defence" should be relaxed in a case of this character.

When a party seeks to have a principle of law applied in a special charge to the jury, he must present such a statement of facts, as a predicate, as would make the principle of law invoked legally applicable under the evidence to the particular case.

APPEAL from the Eighteenth Judicial District Court for the Parish of Lafourche. *Caillouet, J.*

50 847
50 1324
51 1110
51 1112
51 1118
50 847
112 284
113 727
50 847
117 872

*M. J. Cunningham,* Attorney General, and *L. C. Moise,* District Attorney, for Plaintiff, Appellee.

*Howell & Martin* and *Clay Knobloch & Son* for Defendant, Appellant.

Submitted on briefs June 13, 1898.
Opinion handed down June 25, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant, indicted for the murder of his wife, was found guilty of manslaughter, and sentenced to imprisonment in the penitentiary for eighteen months.

Third Bill.—In a third bill of exceptions, defendant recites that his counsel offered to prove on cross-examination of Dora Putnam, a witness for the State, that the defendant and his wife had had a struggle begun by her, the wife, in which she, prior to any aggression or hostile demonstration made against her, had attempted to disarm defendant so as to protect Delatte, who, the evidence showed, had been caught by defendant in defendant's bedroom near defendant's wife, with his (Delatte's) pants unbuttoned and suspenders down, and that it was only after said struggle begun by the wife that he, defendant, cut her with a razor, and thereupon counsel attempted to prove by Dora Putnam that the deceased was much stronger physically than he was, but he was not permitted to make the proof under objections made by the State and sustained by the court.

The court, in reference to this matter, says that it had stated the status of the case on this point in the bill of exceptions taken to the court's refusal to admit the testimony of the witness Delatte on the same point, and the reasons therein assigned for the court's refusal it reiterated with the additional statement that the court did not refuse to allow the witness Putnam to testify as to the struggle or tussle between the defendant and his wife, but on the contrary allowed her evidence on this score to go before the jury, as counsel practically admitted in the statement of facts referred to and annexed to another bill taken on the trial in the presence of accued and his counsel; that the court did, however, refuse to permit this witness to testify to the superior strength of the wife for the reasons

stated in other bills and reiterated, viz.: That a full view of the case showed the accused to have been the aggressor in the first instance against the witness Delatte, who was in the room with his wife, or against both indiscriminately, and that whatever struggle ensued between him and deceased was but an incident of his original act of aggression, from which he had not desisted in good faith, and for the further reason that at the time of the struggle for the pistol, the firing by the deceased had stopped and the *post-mortem* examination showed that two bullets had entered the deceased's body.

Fourth Bill.—In a fourth bill of exceptions it is recited that after evidence had been offered which defendant's counsel fully believed had abundantly shown that as between defendant and his wife, the wife in the struggle between them which led to the killing was the aggressor, and when counsel were proceeding to prove that the wife was much more powerful than the husband on the State's objection that the defence had not laid the proper foundation for the introduction of proof as to the relative strength of the wife and husband.

Defendant was not permitted to make such proof by reason of the court sustaining the objections made. That thereupon counsel reserved bill of exceptions and asked the court to order that all the evidence just taken on the question as to who was the first aggressor to be taken down in writing, so as to annex said evidence to said bill of exceptions under the provisions of Act No. 113 of 1896, but that the court ruled that said act did not provide for the taking down of evidence, but simply provided for a statement of facts to be taken down, to which ruling of the court defendant reserved a bill of exceptions.

The addendum of the court to this bill states that the court caused a statement of facts upon which the ruling was made to be then and there taken by the clerk of the court in the presence of the accused and his counsel, and before proceeding any further with the trial, and that the court annexed said statement to the bill of exceptions. The court stated that the testimony given in the statement of facts was in substance that which was given by the witness, Dora Putnam, at the time at issue, and was taken down by the clerk as dictated by the judge in the presence of the jury, the accused and his counsel and the witness on the stand. That the testimony of the witness, Dora Putnam, was the only testimony which was sought to be reduced to writing, and in passing on this issue as to whether a

54

sufficient foundation had been laid to introduce the proof of superior strength, the court had necessarily to consider the testimony of witnesses preceding her as well as hers.

The statement of fact referred to, after having recited that counsel for defendant had elicited, on the cross-examination of Dora Putnam, a witness on the stand in behalf of the prosecution, that the accused had shot at Fernand Delatte, who was found in the room with his wife, whereupon the wife had stood between Delatte and the accused in the attitude of protecting Delatte; that she had attempted shoving defendant aside, whereupon a tussle ensued between the husband and wife; declared that counsel thereupon proposed to prove that the wife was much more powerful than the husband, when the District Attorney objected to such evidence and the court sustained the objection. That the objection was sustained for the reason that, in the opinion of the court, the evidence produced on the trial by the witness on the stand and a prior witness satisfied the court that the accused was the origiaal aggressor, and there was no evidence to show that he had desisted from the fight in good faith; that the accused was the original aggressor as against Fernand Delatte, who was with his wife in the room when the whole difficulty began. That the court considered the tussle between the accused and his wife was a part and incident of the whole difficulty.

Sixth Bill.—The sixth bill was taken to the refusal of the court to give the following requested special charge to the jury:

" If the jury find from the evidence that the accused had good reason to believe that his life was in danger, or that he was in great danger of serious bodily harm, he had a right to use such force as might have been necessary to protect his life or save himself from great bodily harm, even though to accomplish this it were necessary to slay his wife."

Counsel recites in the bill that the charge was asked under the following condition of the evidence:

" That there was a scuffle between the husband and the wife—that the wife had grabbed the hand in which the husband had held his pistol with which he had just fired at Delatte, the party whom he found with his wife in her bedroom with his pants unbuttoned, and that the wife while holding the pistol which accused held in his hand called out ' Come, Fernand I have got him—he can't hurt you—we will kill him.' "

The court in its statement annexed to this bill says that the evidence was not fully stated by counsel. There was evidence as stated by counsel, but that was not the whole evidence on the point.

The evidence tended to show that when the accused entered the room he surprised Delatte and his (accused's) wife in a compromising attitude (the accused testifying as a witness that he caught them in the very act of adultery)—that accused fired at Delatte (the first shot), that three of four shots were fired according to some witnesses, and one or two shots according to others—accused as a witness being unable to say how many shots were fired. That Delatte was shot through the arm and the deceased received two bullets in the breast, the accused being the only one who did the shooting.

That the shooting took place in a very small room in which the accused surprised his wife and Delatte—both being in the same room during the shooting.

That accused as a witness on the stand declared that his wife caught his arm and the pistol which he held in his hand, and that after she had so grabbed it, she called out: " Come, Fernand, I have got him—he can't hurt you; we will kill him." That he then pulled out a razor and cut the deceased, that he did not know how many times, or if he cut her more than once. The court deduced from the testimony of the husband, that the wife had caught his arm after the shots had been fired, and that the struggle between the husband and wife was for possession of the pistol.

The court says that the only witness who testified to the wife's calling out " Come, Fernand, I have got him; he can't hurt you; we will kill him," was the husband himself. The court said the testimony showed that the wife was cut three times by the razor—a gash in the abdomen, a cut on the wrist or hand, and her throat cut from ear to ear, severing the windpipe. That the witness Dora Putnam testified that the throat had been cut back of the house near a cistern, the deceased having run out of the house and having been pursued by the husband, who overtook her and cut her throat there; but that in justice to the accused, it should be stated that there was some evidence before the jury tending to impeach this witness.

That the court concluded from defendant's own version of the case that there was no element of self-defence in it, and no reason

to charge as to self-defence, even if the requested charge had been good law. That if the court correctly apprehended the law, the accused was not justified in shooting Delatte under the facts of this case; if not justified he was about to commit a felony on him and it was not an assault on the part of the deceased in trying to prevent him from perpetrating his design, which would authorize the accused to resort to it in self-defence.

That according to accused's own testimony, the deceased grabbed his arm and pistol after he had ceased firing (he could not tell or remember how many times he had fired), and at that time two of his bullets had taken effect in the body of the deceased (whether fired at her or at Delatte, making no difference), and the accused not having desisted from the fray in good faith at the time the struggle with his wife commenced, he could not claim to have been acting in self-defence.

Seventh Bill.—The seventh bill was taken to the refusal of the court to give to the jury the following requested special charge:

" If the jury find from the evidence that the accused discovered his wife in such a position with Fernand Delatte as to convince any reasonable man that they were in the act of adultery, and that he was so incensed and outraged by the sight that he lost all control of his reason, and acting under the overpowering influence produced by the sight of his shame and humiliation, he then and there drew his pistol and fired, and after his pistol was empty he immediately drew a razor and inflicted a wound upon his wife from which she died, the accused is not responsible for his acts and the jury must acquit."

Counsel recites in the bill of exceptions that the charge was request under the following condition of the evidence:

That evidence had been adduced showing that " the husband came upon his wife and one Fernand Delatte sitting on the bed together in his bedroom very close to each other, with Delatte's pants unbuttoned and Delatte playing with his wife at the time or just before the husband entered into the room " playing a play [as expressed by the witness Delatte on cross-examination] different from any he had ever played with the wife in the presence of the husband. That the room was closed at the time of the entrance of the husband, who opened and came through the back door, the wife and Delatte being alone in the room."

The court stated it refused the charge, because, in its opinion, it was not good law. That it had already charged the jury as to the law applicable to homicide upon the detection in adultery of a wife and her killing by the husband on such discovery and no exception was taken to such charge, except such as might be deemed taken inferentially by the request for the special charge, which was refused.

## OPINION.

The immediate and direct cause of the death of appellant's wife was the razor cut across the throat. Whether the gunshot wounds were themselves of a character to have proved fatal does not appear. Defendant was indicted for and on trial for " murder." The last special charge (referred to in the seventh bill of exceptions) asked not for a reduction of the crime to " manslaughter," but for an absolute " acquittal."

In Price vs. The State, 18 Texas Court of Appeals, 474 (5th Criminal Law Reports, page 385), the Supreme Court of Texas, under a special statute of that State, held justified the killing by a husband of a person whom he had discovered with his wife under circum- stances such as to cause him to believe upon reasonable appearances that they were either then in the actual commission of adultery, or were about to commit such act, or were still together, the act having just been committed. In the body of its opinion the court said: " We are not aware that a similar statute making such a homicide justifiable can be found in the Codes of any other State, though the principle and precedent from which ours is derived is of most ancient origin. But in most if not in all of the States as at common law a killing under such a circumstances would reduce the homicide from murder to manslaughter.

Blackstone says: " So if a man takes another in the act of adultery with his wife and kills him directly on the spot, though this was allowed by the law of Solon, as likewise by the Roman civil law (if the adulterer was found in the husband's own house), and also among the ancient Goths, yet in England it is not absolutely ranked in the class of justifiable homicide, as in a case of forcible rape, but it is manslaughter. It is, however, the lowest degree of it, and, there- fore, in such a case, the court directed the burning in the hand to be gently inflicted, because there could not be a greater provocation." 4 Black. Com. (Chitty), Side P. 191.

Mr. Bishop states the rule as it now obtains thus: "If a husband finds his wife committing adultery, and, provoked by the wrong, instantly takes her life, or the adulterer's * * * the homicide is only manslaughter."

We have not in Louisiana a statute corresponding to that in Texas, and we have, therefore, to be controlled by the rules of the common law, which do not "justify" a homicide committed under the circumstances stated, but reduce it to manslaughter. The special charge, as asked for, was properly refused.

The special charge asked and refused by the court, forming the subject matter of the fifth bill, was correctly refused; it was substantially the same charge as that referred to in the seventh bill, altered a little as to phraseology. It assumed as a fact that a husband called to face such a scene as that referred to in the different bills of exception, must be so wrought up by excitement as to make him irresponsible for his acts to the full extent of justification. There is no claim that there was any testimony in the case as to "insanity." We have said that a husband would not be "justified" to the extent of an "acquittal" for killing a man whom he discovered in actual adultery with his wife; if this be so, he would not be justified in acting under a "delusion" that such act was being committed.

The complaint which forms the subject-matter of the third bill of exception, has given us much concern.

The theory of defendant's case, which there was some testimony tending to establish, and which it was for the jury to weigh, was that on his entering his bedroom at his home by a back door (the front door being bolted) he found the blinds closed and one Fernand Delatte on his bed in the act of adultery with his (defendant's) wife. That he immediately fired several pistol shots at the parties, two shots taking effect in the wife's breast and one in Delatte's arm; that the wife seized her husband's arm and attempted to wrest his pistol from his hand, calling out: "Come, Fernand, I have got him; he can't hurt you; we will kill him;" that a tussle ensued between husband and wife, in the course of which the former drew a razor and cut his wife across the wrist, across the abdomen and across the throat, killing her. Defendant's theory is that his life was endangered through the action of the wife in seizing his arm and calling on Delatte to advance upon him, and that they would have killed him.

We understand the District Court to hold that the evidence was inadmissible and irrelevant, inasmuch as a homicide committed upon the wife under such circumstances could not be "justified," but would remain "manslaughter" even though the husband had good reason to believe that his life was in danger, or that he was in great danger of serious bodily harm and although he had used only such force as might have been necessary (even to the extent of killing his wife) to protect his life or save himself from great bodily harm. We understand him to hold that the original shooting and wounding by the husband, though not "murder," was none the less illegal and "manslaughter" — that *quoad* the shooting and fighting. Defendant was the aggressor *ab initio*, and that this original illegal *status* was sufficiently retained throughout the subsequent phases of the trouble to prevent his conduct from being held "justified;" that under the circumstances stated he was still "legally" guilty of "manslaughter." The court applied to the case the rule that the aggressor in a fight or difficulty can not plead "self-defence" in "justification" of a homicide unless and until he had withdrawn from or attempted to withdraw from it in good faith. It did not trace the trouble as to its origin further back than the husband's firing the shots, and left the wife and the adulteress as being "aggressors in any way in the immediate difficulty entirely out of view. We think there is a difference between the case of a person who, having originally no immediate cause of provocation himself, should originate a difficulty which, in its after phases, would lead to his killing the person whom he led into it, and that of a man who entering into his own home is there brought to face a scene calculated to throw him into a condition of frenzy, under the influence of which he commits an act which, though not legally excusable, comes near the border line of justification. We think the situation was such as to justify us in referring the origin of the difficulty to the wife and her paramour as the "aggressors," sufficiently so to open the door to submisson to a jury of a plea of "self-defence" when in one of the after phases of the difficulty the husband's life had been placed in danger by one of them, and in order to save the same he had killed the party making the killing necessary.

We think the rigor of the rule which the court refers to should be relaxed in a case of this character, and that the matter of self-defence should have been submitted to the jury to be by it passed

upon under the whole evidence, and that this excluded testimony could legally have formed part of it. It is true that the jury found the accused guilty of manslaughter, but *non constat* what their verdict would have been had this testimony gone to it. We must not read the situation from a standpoint of affairs after the verdict and assume that defendant, under a verdict of manslaughter, has been accorded all the relief that the facts and the law entitled him to. We are not informed of all the facts of the case. We do not know were Delatte was or what he was doing at the time the wife of the defendant called out to him. Had Delatte advanced upon defendant while he was held by his wife, the situation might well have become critical.

It is possible that appellant had no good substantial ground for believing his life to have been in danger at that time and through his wife's conduct, but that was a matter for the jury to determine.

We think special reference to the fourth bill unnecessary. The fact is obviously conceded on both sides that accused shot at Delatte, and at his wife, before the latter made any demonstration against him. The fact being conceded, there was no necessity for testimony on that point to have been taken down by the clerk.

The question of law attempted to be raised in the sixth bill taken to the refusal of the court to give to the jury the special charge therein referred to, has been discussed in our opinion as to the correctness of the court's ruling, excluding the testimony of Dora Putnam. The charge asked was properly refused, as it did not set forth a given state of facts to serve as a predicate for the same. The principle asked to be announced by the court was clearly unsustainable as an absolute, general, legal proposition.

For the reasons herein assigned, it is ordered, adjudged and decreed that the verdict of the jury and the judgment thereon be and the same are hereby set aside, and the cause is remanded to the District Court for further proceedings according to law.