(42 South. 352.)

No. 16.223.

STATE v. HOGAN.

(Nov. 12, 1906.)

1. HOMICIDE—INDICTMENT—NAME OF DECEASED.

In an indictment for murder, under section 1048 of the Revised Statutes, the deceased is sufficiently described by his proper name.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 203–209.]

2. CRIMINAL LAW—CONFESSIONS.

A free and voluntary confession made by an accused to a police officer while under arrest is admissible against him, although the accused was not cautioned or warned as to the use that would be made of the same. Intoxication, less than mania, does not exclude a confession made during its continuance, but is a fact for the jury tending to discredit such confession.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1157–1169, 1199.]

3. SAME—CONDUCT OF ACCUSED.

The actions and conduct of the accused after the homicide are admissible in evidence against him, although forming no part of the res gestæ.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 776–785.]

4. SAME — CALLING WITNESSES — DISCRETION OF COURT.

A witness who had not been summoned, when all the other witnesses were excluded from the courtroom, was called by the state in rebuttal, and permitted to testify. over the objection of the accused. Held, that the matter was within the sound discretion of the trial judge, and that such discretion would not be interfered with in the absence of proof of fraud or wrongdoing on the part of the prosecution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1556–1562.]

5. WITNESSES—IMPEACHMENT.

Where nonexpert opinion testimony as to insanity has been received on the stand, evidence tending to show the expression of an inconsistent opinion by the same witness is always admissible in rebuttal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1225.]

6. CRIMINAL LAW—INSANITY FROM DRUNKENNESS—EVIDENCE.

Where the defense was insanity, and defendant's evidence tended to show that his alleged condition resulted from chronic drunkenness, and evidence on the part of the prosecution tended to show that the defendant had at no time been ill since his arrest, it was competent for the state to prove in rebuttal by a physician that a man suffering from such a mania could not recover within 10 days without medical treatment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1061, 1062.]

7. SAME—REMARKS OF PROSECUTING ATTORNEY.

A reply by the prosecuting officer to opposing counsel in the presence of the jury, to the effect that the accused would not be on trial if he were insane, worked no prejudice, since the accused by pleading not guilty and going to trial admitted his present sanity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1674, 3127.]

8. HOMICIDE—MURDER—DEGREES.

In Louisiana there is no statute dividing the crime of murder into two degrees, and defining murder in the first degree as a homicide committed with the specific intent to kill or positive premeditation; and therefore the trial judge correctly refused to give a special charge, based on the theory that the absence of such specific intent would justify the jury in finding the defendant guilty without capital punishment, or guilty of manslaughter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 35–38.]

9. CRIMINAL LAW—INSTRUCTIONS.

A requested special charge, which requires explanation, limitation, or qualification, is not sustainable, and may be refused by the trial judge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 2014–2018.]

10. HOMICIDE—DRUNKENNESS.

Drunkenness at the common law neither excuses nor mitigates criminal offenses not requiring a specific intent, but in a murder case, where the evidence tends to show some provocation, may be taken into consideration, in connection with all the other facts and circumstances, to show that the accused acted from heat of blood, rather than from malice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, § 381.]

(Syllabus by the Court

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

James Raymond Hogan was convicted of murder, and appeals. Affirmed.

Harold Alexander Morse, for appellant. Walter Guion, Atty. Gen., and James Porter Parker, Dist. Atty. (Joseph Edward Generelly, of counsel), for the State.

LAND, J. The defendant was indicted for murder, found guilty as charged, and sentenced to death. He has appealed, and relies for reversal on a number of bills of exception.

1. Defendant filed a general demurrer to the indictment, which was overruled, and thereupon he excepted in due form. The indictment charges that one James Raymond Hogan, late of the parish of Orleans, on the 15th day of November, 1905, with force and arms, in the parish of Orleans, aforesaid, and within the jurisdiction of the criminal district court, "feloniously, willfully, and of his malice aforethought did kill and murder one Christopher Brightsen, contrary to the form of the statute of the state of Louisiana in such case made and provided and against the peace and dignity of the same."

The objection assigned on the demurrer is that the indictment does not describe Christopher Brightsen as a "human being" or as "the deceased." It might as well be argu-

117 LA.—28

ed that the indictment does not describe Hogan as a "human being" or as "the defendant." The statute reads in part as follows:

"It shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased." Rev. St. 1048.

The very charge of murder necessarily implies that the defendant and the deceased were human beings, and the addition of the word "defendant" or "deceased" to the names of the parties would add nothing to the clearness or certainty of the charge. The indictment is in the usual form, and nothing but the gravity of the offense and of the sentence induces us to notice this bill.

2. This bill is based on the same objections renewed by demurrer to evidence showing that Christopher Brightsen was a "man."

3. It appears from the record that the state offered in evidence a confession of the defendant, to which his counsel objected, on the ground that the proper foundation had not been laid. What was confessed was not disclosed by the record. The judge ruled that the state had shown that the confession was voluntary and without solicitation or coercion. We have carefully reviewed the evidence adduced at the time, and are not prepared to say that this ruling was incorrect. It appears that the defendant on the day of his arrest made a verbal confession to a certain policeman, and on the next day reiterated the confession, for the purpose of having it taken down by the court stenographer. This official testified that the defendant, in response to the question "whether he was making his confession of his own free will," answered, "Yes, sir." In State v. Mulholland, 16 La. Ann. 376, it was held that a confession is admissible in evidence where it has been elicited by questions put by a person having no authority, such as a police officer.

In State v. Berry, 50 La. Ann. 1309, 24

South. 329, it was held that the mere fact that the confession was made while the accused was under arrest or imprisonment to the officer of the law arresting him or holding him in custody does not take from it the character of a free or voluntary confession, although it was made in answer to a question which assumed the prisoner's guilt. In the case just mentioned a number of cases in our reports were cited as sustaining the doctrine of the text, and the court in its opinion made copious extracts from Wharton's Criminal Evidence. It may be here noted that the contention of counsel that the accused was at the time of the confession under the influence of intoxicating liquor is without merit, as Wharton says:

"The mere fact of intoxication, unless amounting to mania, does not exclude a confession made during its continuance, even though the intoxication was induced by a police officer, who sought in this way to induce the prisoner to confess. Confession, however, produced by intoxication is a fact for the jury, tending to discredit the confession. Id. § 676.

In the case at bar the accused, who was recovering from a debauch, was furnished with one stiff drink of whisky, and there is no proof that he was intoxicated when he made either confession.

Counsel further argues that the accused was not cautioned by any one as to the use that would be made of the confession. Counsel cites several Texas cases in support of his contention. Wharton, supra, in note 3, p. 543, says:

"By statute in Texas, unless a prisoner is warned that his statements may be used against him, they cannot be admitted in evidence."

The same writer states the common law to be that:

"A free and voluntary confession of an offense as specifically charged, or of a fact from which such offense can be inferred, whether made before or after apprehension, and whether in writing, or in unwritten words, or by signs, is admissible when offered against the accused, no matter where or to whom it was made." Id. § 631.

In the same work the author refers to statutes in England (11 & 12 Vict. c. 42, 14 & 15 Vict. c. 93) providing for confessions before magistrates, and requiring them to caution the accused. Our Revised Statutes (section 1010) make it the duty of the examining magistrate to receive and reduce to writing the voluntary declaration of the accused, which he shall make without promise or threat; but it does not impose on that officer the duty of warning or cautioning the accused. Hence, in the absence of statute, we must adhere to the common-law rules governing confessions in criminal cases.

4. The objections in bills 6 and 7 were against evidence tending to show the actions of the defendant on the evening of and after the homicide, on the ground that such actions formed no part of the res gestæ. The principle invoked does not apply to the actions and conduct of the accused. Bill No. 11 was taken to a question which was undoubtedly leading, but no objection was made until after the witness had answered. This bill contains other objections based on alleged statements of fact, which are controverted in the per curiam of the judge. The witness, a sergeant of police, testified that when the accused was asked to give his name to the clerk at the station, he said "he did not murder the man." The objections were that the accused at the time was under the influence of liquor, delirious, and the victim of insane delusions. Bill No. 12 discloses like objections to similar testimony given by another police officer.

5. The witnesses had been put under the rule, and when a witness named Grow was called by the state, defendant's counsel objected, on the ground that the witness had been in the courtroom all day long, and had failed to comply with the order of the judge. This objection was overruled, for the reason that Grow was not summoned as a witness, and that it was only after a certain witness

for the defense had been examined that the state found that Grow would be needed as a witness. We do not think that the trial judge abused the discretion confided in him in such cases. See State v. Jones, 47 La. Ann. 1532, 18 South. 515, in which the court said in a similar case: "The question is one which appertains principally to the régime of the court and to disobedience of its orders." See, also, State v. Goodson, 116 La. 388, 40 South. 776.

6. One Egloff was called by the accused as a witness to prove the special defense of insanity at the time of the homicide, and testified that he had known the defendant from childhood, and considered him a crazy man, whether drunk or sober.

On cross-examination the state asked this witness if he had not on the night of the homicide told Grow that the accused "was a rat, and ought to hang for it." The witness denied making any such statement. The state in rebuttal placed Grow on the stand to prove that the witness Egloff had made such a statement. Grow so testified. Defendant's counsel objected to the question as leading, and the evidence as not properly in rebuttal. The court overruled the objections, on the ground that the testimony of Grow went to the veracity of Egloff and the weight to be given to his testimony.

Leading questions in such a case are permissible. Greenleaf (16th Ed.) §§ 434, 435, p. 539.

The witness Egloff was called as a nonexpert witness to prove insanity, and expressed the opinion that the accused was "crazy." Greenleaf says:

"It must be added that where opinion testimony has been properly received on the stand, as from an expert, an inconsistent expression of opinion, as all coincide, may be shown." Id. §§ 462–462b, p. 595.

The only remaining question is whether the evidence objected to tended to show that Egloff had expressed an inconsistent opinion on the night of the homicide. We think that the evidence had such a tendency, because if the witness really believed that the accused was crazy whether drunk or sober, he would hardly have expressed the opinion that accused should be hung because he was a "rat," who had committed a homicide. The error of counsel is in assuming that the impeachment of the credit of a witness is a "collateral" matter.

7. The state in rebuttal called Dr. O'Hara to the stand, and propounded the following questions:

"Q. Now Doctor, is a man suffering from the delusion of persecution, brought about by chronic overindulgence in drink for a period of nine years, would that man be able to get well inside of a day or inside of ten days, without medical treatment?"

The witness answered "No, sir." The question was purely hypothetical, and the trial judge states that the evidence showed that at no time had the defendant been ill from the day he was incarcerated to the day of the trial, and was admissible to prove that he was not insane at the time of the homicide; for had he been insane he could not have recovered without proper treatment. The defendant pleaded insanity, and his counsel adduced evidence tending to show that the accused had been a habitual drunkard for nine years.

The evidence of Dr. O'Hara was admissible to rebut defendant's evidence as to insanity resulting from excessive indulgence in intoxicating liquors.

8. In a colloquy between counsel, when objections were made to the testimony of Dr. O'Hara, counsel for defendant closed his remarks by saying: "That there is no proof offered by the state before this court as to the present condition of the defendant, whether he is sane or insane," and thereupon the assistant counsel for the state remarked, in the presence and hearing of the jury, "He would not be on trial now if he was insane."

Defendant's counsel objected to said remark as improper and prejudicial to the accused. The defendant did not on the trial plead present insanity, and the law presumes that he was then sane. The remark of counsel for the state was therefore justified by the situation.

9. The following special charge was requested and refused, to wit:

"Where the crime of murder is divided by statute into two degrees, as it is in many of the states, and to constitute it in the first degree, there must be a specific intent to take life, this specific intent does not in fact exist, and the murder is not in the first degree where one not meaning to commit a homicide, and then in this condition, kills a human being. In such a case the courts of those states where murder is divided into two degrees hold that the offense of murder is only in the second degree. In Louisiana murder is not divided into two degrees, but section 785 of the Revised Statutes of this state provides that on trials for murder the jury may find the prisoner guilty of manslaughter, and it is provided by section 1000 of the Revised Statutes of this state that in all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify the verdict by adding thereto without capital punishment. And I charge you further that in this case if you find that the defendant was not permanently insane at the time of the crime, but that he was so drunk that he was incapable of intending to commit the homicide, and that he became drunk not meaning to commit the homicide or any other crime, then it is lawful for you to qualify your verdict, and that you may return a verdict of guilty without capital punishment, or a verdict of guilty of manslaughter."

The per curiam is as follows, to wit:

"My charge, which I have caused to be imbodied in full in the transcript, will show that I charged the jury on the question of murder, manslaughter, and on insanity, and that I charged them that they could bring in four verdicts, viz.: Guilty as charged; guilty without capital punishment; guilty of manslaughter; not guilty; and not guilty on the ground of insanity. The balance of the requested charge I refused to give, as it is not good law. We have nothing to do with the verdicts that might be given in those states where the crime of murder is divided into degrees, and the charge requested, if given, would simply confuse the jury, and be instructing them upon theories, which do not exist in our state and under our laws."

Appended to the bill is a statement of the district attorney, approved by the trial judge,

that the evidence showed that the accused and the deceased had been drinking together, probably to excess, and during the spree the defendant killed the deceased, and robbed his body of a gold watch and ring, which he immediately pawned for the purpose of buying liquor.

It is well settled in our jurisprudence that a trial judge cannot be compelled to give a special charge which requires qualification, limitation, or explanation, and that a special charge is not sustainable unless the principle announced is an absolute, general, legal proposition, applicable to the facts of the case. State v. Jackson, 35 La. Ann. 769; State v. Riculfi, 35 La. Ann. 770; State v. West, 45 La. Ann. 17, 12 South. 7; State v. Kelly, 50 La. Ann. 597, 23 South. 543; State v. Nicholls, 50 La. Ann. 699, 23 South. 980; State v. Cancienne, 50 La. Ann. 847, 24 South. 134.

It is patent that the first portion of the requested special charge referring to the laws and decisions of other states had nothing to do with the case, and was calculated to mislead the jury. The inference was sought to be drawn from the laws of other states that temporary mania resulting from voluntary intoxication would in this state reduce the offense of murder to that of manslaughter. In the concluding part of the requested charge the judge was requested to charge the jury that they might, under the hypothesis stated, return a verdict of guilty without capital punishment, or guilty of manslaughter. Our statutes do not divide murder into two or more degrees, and do not provide that the specific intent to kill or actual premeditation shall constitute murder in the first degree. Reasoning from analogy, the absence of such intent should reduce the offense to the next grade, and not to manslaughter. Bishop says:

"Drunkenness, we have seen, does not incapacitate one to commit either murder or man-

slaughter at the common law, because to constitute either the specific intent to take life need not exist, but general malevolence is sufficient. But where murder is divided by statute into two degrees, and to constitute it .in the first degree there must be the specific intent to take life, this specific .intent does not in fact exist, and the murder is not in this degree, where one not meaning to commit a homicide becomes so drunk as to be incapable of intending to do it, and then in this condition kills a man. In such a case the courts hold that the offense of murder is only in the second degree." Id. Criminal Law, § 409.

Wharton says:

"Hence, drunkenness is material under the statutes resolving murder into two degrees, in which the distinguishing test is a specific intent to take life." Id.

Therefore, conceding, for the sake of argument, that the above doctrine can be invoked under the laws of the state of Louisiana, it would not justify a jury in finding a verdict of manslaughter. The requested charge, therefore, needed qualification, and was properly refused.

In State v. Trivas, 32 La. Ann. 1089, 36 Am. Rep. 293, cited by defendant's counsel, the trial judge charged the jury that the intoxication of the accused could mitigate the homicide to manslaughter if such intoxication was of such a character as to incapacitate the accused from forming a deliberate intention ·to kill the deceased,, unless the evidence would satisfy the jury that he had intoxicated himself for the purpose of provoking the deceased into a difficulty, and then killing him. The court said:

"The objection to this charge should not come from the accused, whom it was calculated to favor beyond the limits prescribed by law. The recognized doctrine is that the state of intoxication of the accused may be invoked to negative malice or deliberate intent, in the absence of evidence aliunde to prove premeditation. The intoxication must be of such a character to create a state of mental confusion, excluding the possibility of a specific intent to take life or positive premeditation. Wharton's Criminal Law, vol. 1, p. 52."

It is patent that the requested charge does not accord with the doctrine thus. announced,

as it omits both its limitation and the high degree of proof required in such cases.

The case of State v. Kraemer, 49 La. Ann. 766, 22 South. 254, 62 Am. St. Rep. 664, involved the issue of fixed insanity as the result of chronic drunkenness, ·but contains an instructive reference to authorities bearing on the point now under discussion. In State v. Mullen, 14 La. Ann. 577, it was held that voluntary drunkenness, when no provocation has been given, furnished no excuse for homicide. In State v. Coleman, 27 La. Ann. 691, it was affirmed that:

"Drunkenness is no excuse for crime, and any state of mind resulting from drunkenness, unless it be a permanent and continuous result, still leaves the person responsible for his acts."

In State v. Watson, 31 La. Ann. 381, the court said:

"We think the correct rule is stated in United States v. Clarke, 2 Cranch (C. C.) 158, Fed. Cas. No. 14,810, that it must appear, in order to excuse the act, that the prisoner at the time of committing it was in such a state of mental insanity, not produced by the immediate effects of intoxicating drinks, as not to have been conscious of the moral turpitude of the act."

In State v. Ashley, 45 La. Ann. 1036, 13 South. 738, the doctrine was approved that in certain cases drunkenness may be taken into consideration, in connection with all the other facts and circumstances, to show that the killing did not spring from a premeditated purpose, but sudden passion and heat induced by some provocation. The authority cited in the Ashley Case, moreover, says:

"The principle laid down by the court is that when the question is, can drunkenness be taken into consideration· in determining whether the party be guilty of murder in the second degree, the answer must be that it cannot."

The accused received the benefit of all the evidence adduced on the subject of his intoxication and mental condition at the time of the homicide. It was for the jury alone to determine whether the evidence. as a whole, called for a verdict of guilty as charged, or guilty without capital punish-

ment, or guilty of manslaughter. The court had no right to charge the jury that any particular phase of the evidence called for a particular verdict.

We see no prejudicial error in any of the rulings complained of by the defendant. The remaining bills of exception have either been waived or are without merit.

Judgment affirmed.