Grant *v.* The State.

Atkinson, J. 1. It is not a good assignment of error on a portion of the judge's charge which states a correct principle of law applicable to the case, that some other correct and appropriate instruction was not given. *Harvey* v. *State*, 121 *Ga.* 590 (2) (49 S. E. 674); *Howell* v. *State*, 124 *Ga.* 698 (2) (52 S. E. 649); *Nail* v. *State*, 125 *Ga.* 234 (2) (54 S. E. 145); *Powers* v. *State*, 138 *Ga.* 624 (4) (75 S. E. 651); *Hicks* v. *State*, 146 *Ga.* 221 (6) (91 S. E. 57); *Holston National Bank* v. *Howard*, 148 *Ga.* 767 (98 S. E. 269); *Johnson* v. *State*, 150 *Ga.* 67 (3 *a*) (102 S. E. 439). Under application of the principle stated above, the criticisms on the charge made in the first, fifth, and sixth grounds of the motion for new trial show no cause for reversal.

2. The court instructed the jury: "The defendant has made a statement. While not under oath, yet the jury may believe the statement in preference to the sworn evidence." This instruction was excepted to on the following grounds: "(1) It is an incorrect statement of the law applicable to the statement of defendant, and has the effect of minimizing the statement of the defendant in: this case. Especially is this true in view of the brief manner in which this branch of the law was presented and dismissed by the court. (2) This instruction omitted and failed to inform the jury ·that the defendant had a *right* to make a statement in this case. (3) This charge failed to inform the jury that the statement of the defendant was a legal right which all defendants have in criminal cases. (4) The court also failed to instruct the jury that such statement 'shall not be under oath,' and failed to instruct the jury it 'shall have such force only as the jury may think right to give it.' *Held*, that, even if the assignment of error was good in form, none of the grounds of criticism of the charge were meritorious.

3. The evidence did not require a charge (1) on the law of misadventure or accident, (2) or on the law of involuntary manslaughter in the commission of an unlawful act.

4. The evidence was sufficient to support the verdict finding the defendant guilty, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent because of sickness.*

### No. 2397. November 17, 1921.

Indictment for murder. Before Judge J. B. Jones. Hall superior court. December 18, 1920.

J. C. Grant, on trial for the murder of Wyley Heussey, was found guilty, and the jury recommended that he be punished by imprisonment in the state penitentiary for life. His motion for a new trial having been overruled, he excepted.

The homicide occurred on a street and near a restaurant in the business section of the city of Gainesville. The testimony of the State's witnesses tended to show that it occurred under the following circumstances: An automobile was standing parallel with the sidewalk extending along the side of a building, the left wheels resting in a shallow gutter in the street running along the edge of the sidewalk. J. B. Hale, proprietor of the car, was seated in the left front seat in a position to drive, and B. M. Farmer was in the right front seat. They were preparing to go home, and invited Wyley Heussey to go with them. Heussey was standing on the sidewalk facing the left side of the car, talking with Hale. Other persons were about the car. After testifying as above, Hale testified further: J. C. Grant came up flourishing his pistol, commanding the crowd to "hands up." After intim-

idating the crowd in such manner, he went around on the right side of the car and fired his pistol twice at Farmer, one shot grazing his breast and the other passing through the fleshy part of the forearm. Referring to the first shot that was fired, Hale testified that Grant, addressing Farmer, said: · " You and I have had an argument to-night," and fired at Farmer; also that when the shot was fired Hale was leaning forward over his steering-wheel and Farmer was leaning back with his hands up. Hale further testified: " As far as I can figure it out he [Grant] struck him [Farmer] when he came down with the gun; he hit him in the mouth with the cylinder of the gun, and the fire of the gun burnt his chest. . . He is said to have been struck in the face at the time the shot was fired, by the doctor. I did not see him strike him." Concerning the first shot Farmer testified: " Grant ran around the car and threw his pistol in my face, and struck me there [indicating] on the lip and fired. And as he threw his pistol over he says, ' You and I have had an argument before, and I guess, . . this will settle it.' . . He throwed his gun over into me and shot, and the shot glanced me across the breast here [indicating], and then when he done it I started to jump out on him. I started to get out and reached for the front of the door and he shot again and shot me through the arm. . . From where he was that would have been straight across the car front. At that time Heussey would have been directly towards him. Heussey was still standing there when the first shot was fired."

At the first shot Hale jumped out of the car and ran, as did all the others except Farmer. He reached into the pocket of the right front door of the car, drew out a pistol, and proceeded to attack Grant, shooting at him twice as he ran behind the car. When the shooting was over it was ascertained that Heussey had been wounded by one shot that entered his body near the navel and came out at the back, from which wound he died in about thirty minutes. The defendant did not introduce any witness, but made a statement before the jury, in which, so far as neces-sary to be stated, he denied that he was the man who killed Heussey, and stated further that Hale shortly before had as-saulted Heussey, on account of which " some of the boys came running around and says, ' We ought not to let no Atlanta man

do a Gainesville boy that way,' and I ran over to my car, cut loose and come around there. Well I reached and got my gun, .32 calibre. . . They wasn't but one bullet. That is the ball that Mr. Summers found in the car. I went around to where Farmer was in the car. Hale was going to go, and I ran around in front of the car, and Heussey was between the building and the car. And Farmer says, 'What the damned hell you got to do with it? Don't move now.' He had his gun in his hand, a .45. I hit him with this gun, .32 calibre, my pistol, the onliest one I had; hit a stroke across there, . . and the gun discharged by striking Farmer. I ran. I knew there wasn't but one cartridge in it. I ran around back of the car, . . and just as I turned by the left-hand wall of this house, this man kept shooting at me; done shot me through the leg, and all of them was running down the street and he shot at me two or three times in the crowd."

The grounds of the original motion for new trial were the usual general grounds. The grounds of the amendment to the motion were:

1. The court charged the jury as follows: "The defendant enters the trial with the presumption of innocence in his favor, and that presumption follows him until his guilt has been clearly proven under the rules which the court gives you in charge." Movant insists that said charge is error, for the following reasons: (1) It omitted to inform the jury that the testimony in the case, to overcome this presumption, must have the effect of satisfying the jury to a moral and reasonable certainty and beyond a reasonable doubt of the guilt of the defendant. (2) It failed to inform the jury that the presumption of innocence is in the nature of evidence, and avails the defendant at every stage of the trial until it is overcome by evidence which has the effect of satisfying the minds of the jury as to the defendant's guilt, to a moral and reasonable certainty and beyond a reasonable doubt.

2. The court charged the jury as follows: "The defendant has made a statement. While not under oath, yet the jury may believe the statement in preference to the sworn evidence." Movant insists that said charge is error, for the following reasons: (1) It is an incorrect statement of the law applicable to the statement of defendant, and has the effect of minimizing the statement of the defendant in this case. Especially is this true in view

of the brief manner in which this branch of the law was presented and dismissed by the court. (2) This instruction omitted and failed to inform the jury that the defendant had a *right* to make a statement in this case. (3) This charge failed to inform the jury that the statement of the defendant was a legal right which all defendants have in criminal cases. (4) The court also failed to instruct the jury that such statement "shall not be under oath," and failed to instruct the jury it "shall have such force only as the jury may think right to give it."

3. The court erred in omitting and failing to charge the jury the law of misadventure or accident. This omission was error, because: (1) The facts raised this issue and required such a charge. (2) Such law, under the evidence, was directly applicable to the case, and the failure so to charge was prejudicial to the movant and his rights. (3) Under the evidence of witnesses for the State and the statement of the accused, it was shown that accused and deceased were friends, and that the conduct of the accused, on the occasion of the homicide, was induced by a desire on his part to protect the deceased in a matter of difference which had arisen between J. B. Hale, witness for the State, and the deceased. (4) No motive on the part of defendant for the killing of the deceased was shown by the evidence.

4. The court erred in omitting and failing to charge the jury the law of involuntary manslaughter in the commission of an unlawful act. This omission was error, because the facts in this case raised this issue and required such a charge. B. M. Farmer, witness for the State, testified: "And he was between the car and Grant. Grant was out a little further in front. Then all at once he ran around the car. Came around the front end of the car. Q. Who ran around? A. Grant, and threw his pistol in my face, and struck me there on *lip, and fired.*" Defendant stated: "Farmer says, 'What the damned hell have you got to do with it? Don't move now. . . I hit him with the .32 calibre, my pistol, the only one I had; hit a stroke across there [indicating], and the gun discharged, striking Farmer. I ran."

5. The court charged the jury as follows: "I charge you that if Wiley Heussey, the man alleged to have been killed in this case, was shot and killed by Farmer, either purposely or accidentally, then you could not convict the defendant Grant." Movant

insists that this charge was error, because, in connection with said charge, the court failed to instruct the jury that if they had, on this point, a reasonable doubt as to whether Farmer or Grant killed Heussey, then they should give the defendant the benefit of this doubt and acquit him.

6. The court charged the jury as follows: " I charge you that if Grant, without any provocation from Farmer, without any sort of mitigation or justification, shot at Farmer, intending to kill him, with malice, either expressed or implied, and that *the shot that was intended for Farmer,* whether it hit him or not, in some way struck and killed Wiley Heussey, it would not make any difference whether Grant had anything against Wiley Heussey or not, — might have been his best friend; but if he shot at Farmer, intending to kill Farmer, if it had been murder if he had killed Farmer under the law I have given you in charge, then I charge you if that shot, or one of those shots, if there were more than one — all of which you must determine, killed Wiley Heussey, then I charge you that the defendant, J. C. Grant would be guilty of murder. If he shot and killed Wiley Heussey, his defense depends upon whether he was justified, or whether there was any mitigation in shooting at Farmer, if he shot at him. What the circumstances are and what the facts are is for you to determine." Movant insists that said charge was error and prejudicial to him, for the following reasons: (1) The court failed to instruct the jury, in this connection, that the detailed facts must be believed by the jury to a moral and reasonable certainty and beyond a reasonable doubt. (2) This charge failed to instruct the jury on the law of justifiable homicide as contained in sections 70 and 71 of the Penal Code of Georgia; the court having nowhere in the charge defined justifiable homicide or the law in reference thereto. (3) This charge failed to instruct the jury on the law of voluntary manslaughter or upon any of the grades of manslaughter, and failed to inform the jury under what circumstances and conditions a homicide might be mitigated or reduced to manslaughter, or involuntary manslaughter in the commission of an unlawful act, the court nowhere in the charge referring to or defining these branches of homicide. (4) The charge contained no suggestion as to the law in reference to justification

or mitigation in cases of homicide, neither in the particular charge here excepted to, nor in the entire charge.

*W. P. Whelchel, Ed. Quillian,* and *B. P. Gaillard Jr.,* for plaintiff in error.

*R. A. Denny, attorney-general, J. G. Collins, solicitor-general,* and *Graham Wright, asst. atty.-gen.,* contra.