SPEARMAN *v.* THE STATE.

426

*Wolver M. Smith* and *Rupert A. Brown,* for plaintiff in error.
*M. J. Yeomans, attorney-general, Frank Simpson, solicitor-general, E. J. Clower,* and *O. H. Dukes,* contra.

Beck, Presiding Justice.   Harvey Spearman was jointly indicted with five others, for the murder of Joe Culpepper.   When Spearman was tried, the jury returned a verdict of guilty, without a recommendation, and he was sentenced to be electrocuted. He made a motion for a new trial based upon the general grounds. Later he amended his motion by adding the ground that "the court committed error prejudicial to the interest and defense of movant, by failing to instruct or charge the jury the rule of law and evidence relating to circumstantial evidence in said case, when during the trial of said case the State relied alone upon circumstantial evidence for conviction of movant."   Neither the movant nor his counsel, pending the trial and before the case was submitted to the jury, requested the court to give a charge on the subject of circumstantial evidence.   In addition to whatever circumstantial evidence was before the jury, one witness, Norvell Gee, testified as follows: "I was in Jefferson the day Joe Culpepper got killed on the highway, and I saw Joe and Ernest Sorrell in Jefferson that day.   I started home in a wagon with Joe and Raymond and Ernest Sorrell that afternoon about four o'clock. We left here from in front of the court-house and went over to Mr. Singletary's barn where the wagon was, and from there we went right straight up the road.   I don't know whether Joe or Raymond drove.   I sat on the back end of the wagon on the left-hand side facing the right.   Ernest Sorrell was in front of me. Joe and Raymond were sitting on a plank at the front of the wagon-bed and were facing towards the front.   Upon leaving Jefferson I don't know that I met anybody.   I was not paying any attention.   I didn't pay any attention as to how we were turning. After we got on the pavement those negroes passed us in a car.   I saw what appeared to be the same car right where they killed Joe in Jackson County.   Just as quick as we drove in sight the little

yellow negro went to shooting, and I jumped out of the wagon. If there was anything said, I didn't hear it. I didn't see them doing anything before the shooting, except standing at the car. They were not fixing any automobile tire. The car was headed towards Pendergrass, the front wheels were just off the edge of the road to the right, and the negroes were standing just on the left-hand side of the car. When the first shot was fired I jumped out of the wagon. At least four or five negroes were shooting. When the first shot fired I jumped out of the back of the wagon; my intention was to run when I hit the ground; of course I stopped right there; and when they kept shooting at them in the wagon going up the road, and when they thought they had them all down, and they did have them all down, three of them turned around, and that one of them [pointing to Harvey Spearman] turned the gun on me and said 'Kill that damned son of a bitch, and we will have all of them.' They did not shoot at me. There was one in the back seat that didn't have anything to do with it. It was not this one. He was the one that throwed the gun on me. I didn't notice what kind the gun was. I didn't have a gun, I had no weapon, and nothing in my hands, and I didn't say anything to them. About twenty-five or thirty shots were fired. At least four or five of the six were shooting. There were six all together of the negroes. One of them is sitting right there, and another is sitting right there, but I don't know his name. I never saw any of them before to know them, except that yellow Harris negro. . . I didn't see any one in the wagon do anything to these negroes to cause them to start shooting. There wasn't a thing done. It looked like they were waiting, and when we got up even with them they began to shoot. The little yellow negro started shooting first, and when the first shot fired it was just like popcorn, you might say. I saw Harvey Spearman shooting towards these boys. All of them commenced shooting when the first shot fired at the boys in the wagon."

The defendant's statement was as follows: "Gentlemen of the jury, I didn't have nothing to do with this little fuss, I didn't come here for nothing, just to be around here for that school affair, and I stayed around here until just about—I stayed here until about two o'clock and went down here to the colored restaurant, and I run up on Wheel down there, and Wheel asked me

about his mother and grandmother, and I was telling him about his grandmother, and Lonnie Burns and Cam Rakestraw drove up and said to Wheel, 'What about going and getting some beer?' So I says, 'I believe I'll go and get a drink myself; what about going with you?' and Lonnie Burns said, 'Crawl in,' and we all got in and went up to Mr. Frank Drake's, and got two flat tires and was fixing them when the wagon overtaken us, and Lonnie Burns walked up to the wagon and said, 'Is you all the ones that raised that hell in town?' And when he said that the guns went to firing. I didn't have no gun, I wouldn't tote no pistol if I had one. I'm sorry they got me cused of it, for I didn't have a thing in the world to do with it, not a thing."

■ Accepting as true the evidence of the witness Norvell Gee, the finding that the defendant was guilty of killing the deceased, Joe Culpepper, does not depend altogether upon circumstantial evidence. Construing Gee's testimony in connection with the other evidence in the case, it showed that the accused fired into the group of young men in the wagon, and that Joe Culpepper was one of these men. The witness said: "I don't know whether Joe or Raymond drove. I sat on the back end of the wagon on the left-hand side facing the right. Ernest Sorrell was in front of me. Joe and Raymond were sitting on a plank at the front of the wagon-bed and were facing towards the front. . . . About twenty-five or thirty shots were fired. At least four or five of the six were shooting. There were six altogether of the negroes. . . I didn't see any one in the wagon do anything to these negroes to cause them to start shooting. There wasn't a thing done. It looked like they were waiting, and when we got up even with them they began to shoot. The little yellow negro started shooting first. . . I saw Harvey Spearman shooting towards these boys. All of them commenced shooting when the first shot fired at the boys in the wagon." This was direct testimony that the accused fired at the boys in the wagon, and one of them was Joe Culpepper, the deceased. Whether the accused fired the shot that actually killed Culpepper or not, the direct evidence shows that he was acting with those others who were firing; that he had a common intent with them; and whether the bullet from his weapon struck Culpepper or not, he was equally guilty with them. And the evidence of his complicity in the crime is direct, and not

merely circumstantial. There is other evidence in the record corroborating this direct evidence; and the evidence against the accused not being entirely circumstantial, the failure of the judge to charge the jury on the subject of circumstantial evidence affords no ground for the grant of a new trial. In *Burnett* v. *State,* 160 *Ga.* 593 (2) (128 S. E. 796), it was said: "It is only where a case is wholly dependent upon the law of circumstantial evidence that the trial judge is required to give the law of circumstantial evidence. . . Where the indictment is supported by both circumstantial and direct evidence, it is not erroneous for the court to omit to charge the law of circumstantial evidence." Other decisions of this court lay down the same rule.

■ There was no other special assignment of error beside the one just referred to. The verdict was supported by the evidence, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*