## BURNS v. THE STATE.

No. 12730. APRIL 11, 1939.

*O. Frank Brant, T. J. Evans,* and *Dekle & Dekle,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, W. G. Neville, solicitor-general, E. K. Overstreet, P. H. Preston Jr., R. Lee Moore, D. C. Jones, E. J. Clower,* and *H. E. Smith,* contra.

ATKINSON, Presiding Justice. An indictment was returned against Osborne Newton, John Burns, Lonnie Lanier, and Aaron Nelson, charging them with the murder of C. L. Daughtry by shooting him with a gun. On the separate trial of John Burns, his codefendant Aaron Nelson testified as to a conspiracy between all of the defendants to rob Daughtry. The participation by Nelson was to get on the bumper of the automobile of Daughtry when he should slow up in passing over a bad bridge, and to ride along on the bumper, passing the co-conspirators who would be watching, and at a certain place Nelson was to get off the bumper if Daughtry was riding alone, thus giving a signal that no one was with Daughtry. Nelson did as so planned, and on leaving the car left to go home, and soon thereafter he heard four shots fired, and heard of the homicide two days later and after the body had been found. This and other evidence was introduced. The jury found the defendant guilty, with recommendation of mercy. He moved for new trial on the general grounds, and two special grounds as follows :

1. The court charged the jury as follows: "I charge you that conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, unlawful either as a means or as an end. This agreement may be established by direct proof or by inference, as a deduction from conduct which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose. In this case the court leaves it to the jury to determine whether or not there was a conspiracy, or an association, to do the unlawful act alleged in the indictment, and, if so, whether or not the defendant on trial participated in such an agreement and in the commission of the crime charged. The act of one does not bind another, unless and until the criminal intent to do what is done is, to the satisfaction of the jury, established to have existed between the parties; but if you find there was a conspiracy, and that the defendant participated in the common intent and purpose to do what was done, then what was done by another person named in the indictment, in pursuance of that common intent and purpose, would be just as binding upon the defendant on trial as if he did the act himself; the general rule being that when individuals associate themselves to do an unlawful act or acts, any act done in pursuance of that association by any of those individuals is in legal contemplation the act of all. On that subject you look to the evidence and determine whether or not there was an agreement to do an unlawful act, and whether or not this defendant on trial took a part in that agreement. If you find there was such an agreement and that he was a party to that agreement, then he would be responsible for everything done in pursuance of that agreement, regardless of which one did the actual crime, in this case the killing. I charge you, in that regard, it is not necessary that the crime committed, if you find a crime was committed in this case, should have been the subject-matter of the original agreement. The law is, if two or more persons enter into an agreement to commit a crime, and in the carrying out of that crime one or some of them commit some other crime, each of the parties to the original agreement is responsible for what was done in carrying out their agreement. Of course, if you find in this case there was no agreement, or if you find there was one but this defendant did not participate in it, the defendant on trial would not be responsible for what somebody else did." This charge,

movant insists, was error for the following reasons: "Because said charge was not applicable to the state of facts proved by the testimony in said case. The only witness in the trial of said case who testified as to a conspiracy between John Burns and others was Aaron Nelson, who testified that the purpose of said conspiracy was to rob Mr. C. L. Daughtry. See brief of the evidence, . . in the following language, 'The time there when they saw me on Wednesday, something was said to me about what they were going to do to Mr. Daughtry; they said that they was going to rob him, and they wanted some money. Osborne Newton said that John (meaning John Burns) and Lonnie heard him say that. He said they wanted some money.' The expressed purpose of the alleged conspiracy being to rob Mr. C. L. Daughtry and not to murder him, the court should have qualified the charge above quoted in substance as follows: If one member of an association, if you find there was any association of these parties, depart from the original design as agreed upon by all, and himself do an act which you find was not contemplated by those who entered into the common purpose, or was not in furtherance thereof, nor the natural or legitimate consequences of anything connected therewith, the person guilty of such act, even if it was itself unlawful, would alone be responsible therefor, and the other individuals of the association, if you find there was any such association, would not be responsible for such act."

2. The court charged the jury as follows: "On the question of confessions, I charge you that all admissions should be scanned with care, and confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction. To make a confession admissible, it must have been made freely and voluntarily, without being induced by another by the slightest hope of benefit or the remotest fear of injury. You look to the evidence in this case and determine whether a confession was made by the defendant. If you should believe a confession was made, but that it was induced by another by the slightest hope of benefit or the remotest fear of injury, then and in that event . . it would be your duty to disregard the testimony of such confession; but, on the other hand, if you find that a confession was freely and voluntarily made by the defendant, without any such inducement by another, then it would be your duty to

consider it along with the other evidence in the case. I charge you an admission, as applied to criminal cases, is the avowal of a fact or circumstance from which guilt may be inferred, but only tending to prove the offense charged, and not amounting to a confession of guilt. An incriminating statement is one which tends to establish the guilt of the accused, or from which with the other evidence introduced guilt may be inferred, or one which tends to disprove some defense set up by the accused." Movant insists that the law of confession should not have been charged in said case, for the reason that there was no testimony as to a confession by the defendant. E. A. Patterson, witness for the State, testified, referring to John Burns, "So he came up the steps to his house, and he said something or other, 'Well we did something to-night,' but I do not know what he said between. I caught that much of it, but I don't know what happened in between 'Well, we did,' and 'to-night,' and I heard a terrible screaming and crying and such like over there, and in response to it his wife said 'Why did you do that? You are already in enough trouble,' something to that effect." Which statement by John Burns could not be considered a confession, or even an incriminatory statement, but a mere suspicion that he might have referred to the death of Mr. Daughtry.

"Johnnie Jackson, a witness for the State, . . testified: 'I went over to Rocky Ford, and John Burns called me back of Mr. Charlie Johnson's store and told me the best thing I could do was to shut my mouth and keep it shut about the man on the back of that car. He said a dozen or more was in it. Mr. John Burns told me that,' which statement can not be regarded as a confession, but might be considered an incriminatory statement. Carson Lee, . . a witness for the State, . . testified as follows: 'John Burns made a statement to me about this case. That was on a Saturday about two weeks after, I reckon. I wouldn't be positive, but it was about that time; it was shortly after Mr. Daughtry was killed. Where he made that statement to me was down on the street between Charlie Johnson's and B. W. Miller's. He was talking to Brantley and myself when he made the statement, and there was somebody else, but I can not remember who the other person was; and we were talking about Mr. Daughtry being murdered, and I was talking, and John walked up, and the first time I saw him he was standing in the crowd, and he said, "I killed old

man Charlie; who wants to know about it?" And I told him, I said "John, you'd better hush that fool; you might make somebody believe it." At that time he was about as near drunk as he could be. I did not have him arrested right then. I never thought any more about it.' This statement made by John Burns could not be considered a confession, for the reason that the testimony of Carson Lee shows him to have been in a drunken condition when he made the statement; and Carson Lee himself stated that he thought no more about it, evidently considering it the irresponsible statement of a drunken man. At most it could be only considered as an incriminatory statement; and the court erred in charging the law of confession, thereby giving the jury the impression that the court considered it a confession, while the testimony of Carson Lee showed clearly that he did not consider it as a confession. The solicitor-general evidently did not consider it a confession, because no foundation was laid by him through the witness for the introduction of testimony as to a confession by the defendant."

The judge refused a new trial, and the defendant excepted.

1. Where several persons conspire to rob another who is expected to travel in an automobile along a highway, the understanding being that one of them shall wait at a bad bridge and jump upon the rear bumper of the automobile when it slows up for the bridge, and, if the intended victim is alone, jump off the car at a designated place farther down the highway as a signal to the other conspirators lying in wait that the intended victim is alone; and where all this is done, if one or more of those in waiting in furtherance of the common design to rob shoots and kills the person they intend to rob, such killing is a probable consequence of the unlawful design to rob, and all of the conspirators are guilty of murder. *Berryhill* v. *State,* 151 *Ga.* 416 (107 S. E. 158); *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36); *Thompson* v. *State,* 166 *Ga.* 758, 776 (144 S. E. 301); Code, § 26-501.

(*a*) The charge complained of in the first special ground of the motion for a new trial stated correct principles of law properly adjusted to the evidence as substantially stated above, and was not erroneous for any reason assigned.

(*b*) No criticism of the charge is made in the motion for a new trial on the ground that the testimony as to conspiracy by one of the conspirators was not corroborated by other evidence. On

the contrary it is alleged that the judge on the basis of such testimony should have qualified the charge by giving an instruction expressed in different language.

(c) It is not a good criticism of a correct charge properly adjusted to the evidence in the case that the court in connection therewith should have charged other matter which it is contended would have been properly adjusted to the evidence. *Holston National Bank* v. *Howard,* 148 *Ga.* 767 (98 S. E. 269) ; *Grant* v. *State,* 152 *Ga.* 252 (109 S. E. 502), and cit.

2. "All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession **alone,** uncorroborated by any other evidence, shall not justify a conviction." Code, § 38-420. "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." § 38-411. These sections refer to evidence in criminal trials. They recognize distinction between admissions and confessions. In the former only one or more facts entering into the criminal act, are admitted, while in the latter the entire criminal act is confessed. *Owens* v. *State,* 120 *Ga.* 296, 298 (48 S. E. 21), and cit.; *Weaver* v. *State,* 135 *Ga.* 317, 321 (69 S. E. 488) ; *Jones* v. *State,* 130 *Ga.* 274 (60 S. E. 840) ; *McCloud* v. *State,* 166 *Ga.* 436, 442 (143 S. E. 558).

(a) On the basis of the testimony of E. A. Patterson and Johnnie Jackson, admitted without objection, the judge was authorized to charge on the law of incriminatory statements.

(b) It was not cause for a reversal that the evidence of these two witnesses did not also authorize a charge on the law of confessions.

(c) Carson Lee testified, without objection, that while he and other persons were talking of the murder of Daughtry about two weeks after the homicide, John Burns, the defendant, while standing in the crowd said: "I killed old man Charlie; who wants to know about it?" "And I [Lee] told him, I said, 'John, you'd better hush that fool; you might make somebody believe it.' At that time he was about as near drunk as he could be. I did not have him arrested right then. I never thought any more about it." No other evidence tended to show a confession by the defendant. This evidence authorized a charge on the law of confession, and the

charge on that subject as complained of in the motion for a new trial was not erroneous, as contended, on the ground that there was no evidence of a confession.

(*d*) The drunken condition of the defendant at the time of the confession, or that the prosecuting attorney did not consider it a confession or lay the foundation for introduction of the testimony as a confession, did not render the charge erroneous; the evidence having been admitted without objection, and it being inferable from the testimony that the declarant was not too drunk to understand what he was saying. 16 C. J. 729, § 1409; 1 R. C. L. 562, § 109; 2 Wigmore on Evidence (2d ed.), 170, 841 (2). See White v. State, 32 Tex. Cr. 625 (25 S. W. 784); State v. Hogan, 117 La. 863 (42 So. 352); Lester v. State, 32 Ark. 727; Eskridge v. State, 25 Ala. 30; 1 Bouvier's Law Dictionary (3d ed.), 588.

3. "A conviction may be lawfully had upon a free and voluntary confession, though the same be not otherwise corroborated than by proof of the corpus delicti." *Wimberly* v. *State,* 105 *Ga.* 188 (31 S. E. 162); *Owen* v. *State,* 119 *Ga.* 304 (2) (46 S. E. 433); *Chancey* v. *State,* 141 *Ga.* 54 (5) (80 S. E. 54); *Swint* v. *State,* 160 *Ga.* 148 (2) (127 S. E. 459). The case differs from *Lanier* v. *State,* 187 *Ga.* 534 (1 S. E. 2d, 405), on separate trial relating to the same crime, in which there was no evidence of a confession by the defendant.

4. The evidence was sufficient to support the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*