# JESTER *v.* THE STATE.

No. 13944.   November 13, 1941.

*John H. Goddard* and *D. S. S. Walker,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, F. E. Strickland, solicitor-general, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

BELL, Justice. ■ Under the original or general grounds of the motion for a new trial, and the first special ground, it is contended that there was no proof of the corpus delicti, in that there was no evidence that James Gay died, or that, if so, he died from a wound inflicted by the defendant, or that his alleged death did not result from accidental or natural cause, or from his own act. There is no merit in these contentions. It is of course true that the burden was upon the State to prove the corpus delicti, and to show also that the defendant was the perpetrator of the alleged offense. Both of these elements, however, could be shown by circumstantial as well as direct evidence. *Buckhanon* v. *State,* 151 *Ga.* 827 (8), 830 (108 S. E. 209) ; *Brown* v. *State,* 10 *Ga. App.* 216 (2) (73 S. E. 33). The evidence was positive to the effect that the defendant not only cursed and threatened to kill Gay, but struck him twice with a knife, after which Gay "pulled the knife out of his bosom," one of the witnesses using the word

"bosom," while the words "stomach" and "side" were used by other witnesses. One witness testified: "I saw James Gay pull the knife out; that is, in here around his heart." Another testified: "He [Gay] did not say a word, and he stood there until he commenced to give away and went down to the floor. He did not die right there. He lay down and said, 'Lord, have mercy.' Two or three more boys picked him up and got him in a car and said they were going to carry him to the hospital. They said they carried him to the hospital. I didn't go. He died at the hospital."

It appears from the evidence that the difficulty occurred less than two weeks before the trial, and that all three witnesses who testified stated that they knew Gay "in his lifetime," implying thereby that he was dead at the time of the trial. He was "bleeding" at the time he was taken to the hospital. The further statement that he "died at the hospital," was not necessarily to be treated by the jury as hearsay, notwithstanding it had just been stated by the same witness that others carried Gay to the hospital and that the witness did not go. The jury could have construed this testimony as meaning simply that the witness did not go with those who carried Gay. Moreover, even if the witness never did in fact go to the hospital, and may have spoken only from hearsay as to the place where Gay died, it still does not appear as a matter of law that he was not speaking from his own personal knowledge as to the fact of death. "Where a witness testifies to a fact, the presumption is, in the absence of anything to the contrary, that he is testifying from his own knowledge." *Shaw* v. *Jones,* 133 *Ga.* 446 (3) (66 S. E. 240).

The evidence, direct and circumstantial, was sufficient to show death of the person alleged to have been killed, and that he died from a wound or wounds inflicted by the defendant.

■ Error is assigned upon the following charge to the jury: "The court instructs you that in case of mutual combat, if a person killed another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle, before the mortal blow was given.

"Before the slayer can be justified, it must appear that he acted without malice nor in a spirit of revenge, that the deceased was the assailant, that in order to save his own life it was necessary to kill his adversary, or that he was under the pressure of other equivalent circumstances.

"A mutual intent to fight does not necessarily reduce the crime from murder to manslaughter. In order to do so, the killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury shall in all cases be the judge, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and be punished as for murder."

Movant complained that this charge was erroneous as being unsound as an abstract principle of law, and that it was prejudicial to the defendant, but more specifically that it undertook in the beginning to state the law applicable to mutual combat, whereas in effect it stated only the law applicable to justifiable homicide, and was therefore erroneous, confusing, and misleading; also that it was incomplete, in that it authorized the jury to find that a mutual intent to fight did exist, but "omitted any further instructions as to what grade of homicide the jury might find the defendant guilty of, should they find a mutual intent to fight followed by mutual combat."

This charge does not appear to be erroneous within itself or inapplicable, and there is no separate assignment of error on the failure of the court to give in charge any stated principle relating to mutual combat. It is not a good assignment of error on a portion of the judge's charge which states a correct principle of law applicable to the case, that some other correct and appropriate instruction was not given. *Grant* v. *State*, 152 *Ga.* 252 (109 S. E. 502). As a matter of fact, it appears in the record that the judge did, both before and after the quoted excerpt, instruct fully on the law applicable to voluntary manslaughter generally, although he did not in express terms state that passion aroused by mutual combat might reduce a homicide from murder to that offense. But regardless of this, the assignments of error do not show cause for a reversal. See *Dickens* v. *State*, 137 *Ga.* 523 (8), 530 (73 S. E. 826); *Ison* v. *State*, 155 *Ga.* 877 (118 S. E. 721).

■ It is contended that the court erred in not charging the law of circumstantial evidence. It is only where a conviction depends wholly on circumstantial evidence that the judge is required to charge the law relating to such evidence, in the absence of a request. In the instant case the allegations of the indictment were supported both by circumstantial and direct evidence, and therefore the omission to charge on circumstantial evidence was not erroneous. *Burnett* v. *State*, 160 *Ga.* 593 (2) (128 S. E. 796) ; *Spearman* v. *State*, 184 *Ga.* 425 (191 S. E. 471) ; *Ward* v. *State*, 184 *Ga.* 566 (191 S. E. 916).

■ It is complained that "the court erred in not charging the law of involuntary manslaughter." This ground of the motion is too general and indefinite, in that it fails to designate the particular grade of involuntary manslaughter as to which it is contended a charge should have been given, and states no principle of law that was omitted. *Drane* v. *State*, 147 *Ga.* 212 (2) (93 S. E. 217) ; *Williams* v. *State*, 176 *Ga.* 372 (168 S. E. 5) ; *Armstrong* v. *State*, 181 *Ga.* 538 (3) (183 S. E. 67) ; *Norris* v. *State*, 184 *Ga.* 397 (191 S. E. 375) ; *Kennedy* v. *State*, 191 *Ga.* 22 (11 S. E. 2d, 179) ; *Cornelious* v. *State*, 193 *Ga.* 25 (17 S. E. 2d, 156).

■ It is complained that the court erred in not charging the jury on the law of accident or misadventure as a defense in criminal cases. There is no merit in this ground. The evidence did not disclose any basis for a charge upon such theory. If any issue as to misfortune or accident was at all involved, it was presented only by the defendant's statement; hence, the failure to charge thereon was not error, in the absence of request. Compare *Thompson* v. *State*, 191 *Ga.* 222 (5) (11 S. E. 2d, 795).

■ The other special ground is expressly abandoned. The evidence authorized the verdict, and the court did not err in refusing a new trial.     *Judgment affirmed. All the Justices concur.*