## 20670. ALBERT *v.* THE STATE.

CANDLER, Justice. Ernest Albert was indicted in Columbia
County for the murder of Cullen E. Purvis. The indictment

alleges that the offense was committed on February 13, 1959. When arraigned for trial, he filed a plea of not guilty, but the jury convicted him of the offense charged without any recommendation, and he was sentenced to be electrocuted. He moved for a new trial on the usual general grounds and later amended his motion by adding six special grounds. He was denied a new trial, and the exception is to that judgment. *Held:*

1. When the State placed Sheriff Herman E. Morris on the witness stand, he started to testify about a confession which the accused made to him respecting the homicide with which he was charged. Counsel for the accused objected on the ground that it had not been shown that the accused had made any confession voluntarily and without being induced to do so by the slightest hope of benefit or the remotest fear of injury, and on the further ground that it had not been shown by the State that the accused was normal at the time any statement was made by him which the State claims was a confession. Respecting this objection and for the purpose of laying a foundation for the admission of this and other testimony which the State intended to introduce as proof of a confession by the accused, the following preliminary showing was made: Sheriff Morris testified that the confession was made to him by the accused soon after his arrest; that it was freely and voluntarily made; that the accused was not induced to make it by the slightest hope of benefit or the remotest fear of injury; that he was advised that any statement made by him could be used as evidence against him; and that he was entirely normal when a confession of his guilt for the murder of the deceased was made to the witness. Clinton Rogers, a witness for the accused, testified that the accused had "some kind of attack there" in the jail soon after he was brought in; that he called Sheriff Morris and informed him of the occurrence; that the sheriff first came up in the jail alone; that two other officers came up soon afterwards; that one of them put some water on the accused's face; and that, after the accused "come around and got back to normal," they took him out of the jail. H. T. Sullivan, a witness for the accused on the preliminary hearing, testified that Sheriff Morris went upstairs in the jail for the purpose of bringing the accused down so they could question him about the homicide of Mr. Purvis; that he called back from the top of the

steps and said something was wrong with the accused; that he and another person immediately went upstairs; that the accused was partly on his bed, but not unconscious; that he washed his face and wiped his mouth; that he then had him to get up and walk around; that they later took him downstairs; that the accused asked him to pray for him and he did so; and that, after about 20 or 30 minutes, the accused told them in detail how he killed the deceased with a hammer for the purpose of robbing him. Dr. S. L. Hutchinson, a witness for the accused, testified that he was employed at the Veterans Hospital in Augusta, Georgia, as a physician and psychiatrist; that the accused was admitted to that hospital as a patient on February 17, 1959, and at the time of his admission, was very sick emotionally. The objection previously made by counsel for the accused was then overruled, and the witness Morris testified that the accused soon after being arrested freely and voluntarily stated to him, in the presence of others, that he killed Mr. Purvis and that robbery was his sole motive for doing so. The witness then related the facts as they were told to him by the accused respecting the time of the killing, the place where it occurred, the manner in which the killing was done, how he covered the body of the deceased with brush and straw, the amount of money he took off the deceased's person after he killed him; about wearing the cap of the deceased away from the scene of the killing, and taking his taxicab and driving it away from the place where the homicide occurred. He also testified that the deceased was last seen on February 13, 1959, and that his dead body was found two days later in Columbia County about 25 feet off Ridge Road, the body being partly covered with straw. His taxicab had been found the day before stuck in the mud some distance from the place where the body was found. He also found the billfold and the money-belt of the deceased at the place where the accused told him he threw it after the killing and robbery. H. T. Sullivan, as a witness for the State, testified that the accused freely and voluntarily admitted to him that he needed money on February 13, 1959, to meet some of his pressing obligations; that he called the deceased that day to take him to a rural place in Columbia County in his taxicab as a passenger; that he killed the deceased with a hammer, which he had concealed in his pocket, while the deceased was driving his taxicab and not looking in his direc-

tion, and hid his body about 25 feet from the road. This witness also testified that the accused in his presence and while normal freely and voluntarily dictated a statement to Mrs. Catherine Skelley, which she typed and which the accused read and voluntarily signed, and that the accused initialed each clerical error which he found in the typewritten statement. The written statement which the accused dictated to Mrs. Skelley, and which he signed on each page after it was typed, was allowed in evidence, and in this statement the accused admitted the commission of the homicide charged and related in detail all of the acts he committed in accomplishing the homicide, which he planned and carried out for the sole purpose of robbing the deceased. Since a proper foundation was laid for allowing in evidence the oral testimony of Sheriff Morris and of H. T. Sullivan, and also the written statement which the accused dictated to Mrs. Skelley and voluntarily signed after it was typed, there is clearly no merit in special ground one of the motion for new trial. See Code § 38-411; *Garrett v. State*, 203 *Ga.* 756 (1) (48 S. E. 2d 377), and the cases there cited.

2. Since special grounds 2, 3, and 4 have not been approved by the trial judge, but were expressly disapproved by him, they cannot be considered by this court. See Code (Ann.) § 70-301; *Deal v. Lanier*, 208 *Ga.* 615 (1) (68 S. E. 2d 566), and the several cases there cited.

3. In special ground 5, it is alleged that the trial judge erred in denying the defendant's motion for a directed verdict of not guilty, since the evidence demanded a finding that the accused was insane at the time of the killing and therefore not criminally responsible for such act. This ground of the motion is lacking in merit for two reasons: First, "It is not error in a criminal case to refuse to direct a verdict of not guilty." *Winford v. State*, 213 *Ga.* 396, 397 (5) (99 S. E. 2d 120), and the three cases there cited. And second, while the evidence on the question of the defendant's mentality was in conflict, the jury was nevertheless fully authorized to find from it that he had sufficient mental capacity at the time of the killing to distinguish between right and wrong relative to that act. See Code § 26-301; *Lively v. State*, 178 *Ga.* 693 (12) (173 S. E. 836). And there is no merit in the contention that Code (Ann.) § 110-113 changed the rule that it is never error in a criminal case for the trial judge to refuse

to direct a verdict of not guilty. The unanimous decision in the *Winford* case, supra, was rendered by this court after the passage and effective date of an act of 1957 (Ga. L. 1957, p. 224) from which such annotated Code section comes.

4. It is not a good assignment of error on a portion of the judge's charge, which states a correct principle of law applicable to the case, that some other correct and appropriate instruction was not given. *Lumpkin* v. *State*, 152 *Ga.* 229 (3) (109 S. E. 664) ; *Burns* v. *State*, 188 *Ga.* 22, 27 (1c) (2 S. E. 2d 627). Under application of this principle, the criticism made in special ground 6 shows no cause for reversal.

5. The general grounds of the motion for new trial are not meritorious. The State's evidence amply authorized a finding by the jury that the accused killed the deceased without any provocation therefor, and solely for the purpose of robbing him of the money he then had on his person; and the jury was also authorized to find, both from the State's evidence and from the defendant's documentary evidence, that the accused at the time of the homicide was mentally capable of distinguishing between right and wrong relative to the act he committed.

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 13, 1959—DECIDED NOVEMBER 4, 1959.

*W. T. Mobley, John C. Bell,* for plaintiff in error.

*George Hains, Solicitor-General, D. Field Yow, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.