208 So.2d 172 (1968)
STATE of Mississippi
v.
J.L. WILLIAMS.
No. 44701.
Supreme Court of Mississippi.
March 11, 1968.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellant.
John L. Dale, Lucedale, for appellee.
BRADY, Justice:
This case has several unique features which are not commonly found in criminal cases. Therefore, it is essential that we review the various pleadings and orders which were taken herein in the circuit court. Subsequent to appellee's arrest for public drunkenness on July 6, 1966, he was indicted on August 22, 1966, by the grand jury of George County for the armed robbery of R.L. Ward of $2,000 on December 26, 1947.
On August 23, 1966, a severance was granted appellee and appellee pled not guilty to the indictment of armed robbery. Also on August 23, 1966, on motion of Honorable Kenneth B. Robertson, who was serving as Public Defender of the 19th Judicial District, an order was entered transmitting appellee to the Mississippi State Hospital at Whitfield to determine if appellee was physically and mentally competent to assist his attorney and to stand trial.
On December 12, 1966, Honorable J.L. Dale was appointed to represent appellee. On December 14, 1966, motion was made for order admitting appellee to bail and order for bail bond in the sum of $2,500 was granted. On February 6, 1967, motion was *173 made by appellee's attorney, J.L. Dale, to suppress the purported confessions. An order was entered on February 27 suppressing statements made, written or oral, by appellee on July 6, 1966. On February 27, 1967, the cause was continued until the May term of court and appellee was allowed bail in the sum of $2,500. However, in vacation, on Friday, February 24, 1967, a hearing was held on appellee's motion to suppress the purported confessions. It was agreed that the appellee's defense of insanity would not be urged on the motion.
On March 8, 1967, one of the days of the regular February 1967 term of court, it was stipulated that the entire proceedings which were heard on February 24, 1967, at a preliminary hearing, be made a part of the record. It was further stipulated that Robert L. Ward was killed on the date set out in the record and in the indictment; that it was termed homicide and was unsolved; and that it was ruled at that time that Robert L. Ward was robbed and that this defendant was ultimately indicted by the grand jury of George County, Mississippi, on the charge of armed robbery; that he was arraigned on said charge and entered a plea of not guilty and "has come on this day for trial." It was also stipulated that the corpus delicti was proven. A hearing on appellee's motion to suppress the confession was held and sustained. The defendant-appellee moved the court to direct a verdict of not guilty for the defendant, which was sustained.
The court directed the jury to find a verdict of not guilty for the defendant. Final judgment was entered on jury verdict of not guilty on March 10, 1967.
Reviewing the record on appellee's motion to suppress the purported confession we find that appellee's first witness was Mr. John Autry, who operates a cafe in Columbia. He testified that appellee was in his cafe on July 6, 1966, in an intoxicated condition and that he asked him to leave.
The record discloses these additional relevant facts. On July 6, 1966, at approximately eleven o'clock, two city policemen of Columbia, Mississippi, James Sartin and Hoyt G. Ashley, arrested appellee for public drunkenness as he was leaving the Yellow Cab stand of Edmond Breeden. Mr. Breeden, whom appellee had known almost all his life, testified that appellee was so drunk he did not recognize him, but called him by another name. Mr. Breeden also testified that appellee was so intoxicated he could not have known whether it was night or day. The city policemen testified that at the time appellee was arrested he was not capable of making an intelligent statement.
Mr. Homer Sibley, deputy sheriff and jailer, testified he saw appellee that day about twelve-thirty. He stated that the appellee at that time was in an extreme state of intoxication. Mr. Sibley further testified that Judge Sebe Dale talked with the appellee between two and three o'clock that afternoon. Judge Dale had gone into the jail to try to persuade a minor, who had escaped from Columbia Training School, to voluntarily return rather than remain in the county jail until the next term of court.
The record discloses that when the appellee learned that Judge Dale was in the jail he began screaming and "hollering" for the judge to come to talk to him. Two inmates of his cell, Jimmy Carter and Danny Metsieger, testified that the appellee was drunk, crying and "hollering" when placed in the cell and did not know what he was doing. Metsieger testified that appellee was drunk and went berserk, and that when the district attorney came to see appellee about ten o'clock that night he was still drunk.
The record clearly establishes that the appellee stated to Judge Dale that he wanted to tell him about a man he had killed. Judge Dale and the appellee had known each other for a long time. It is also evident from the record that Mrs. Homer Sibley, wife of the jailer, who resides in the jail, telephoned Mrs. Mary Jane Jones, appellee's *174 sister, and notified her "that they were drilling her brother, and he was in no condition to be drilled  that they were drilling him about a murder had happened nineteen years ago  the boy needs somebody to defend him or something because he's not at himself." Mrs. Jones came to the jail around five o'clock and found that the appellee was drunk and did not realize who she was and would not talk to her. She testified that for the past fifteen years she had never "knowed him being sober."
J.L. Williams, appellee, testified that he had been drinking "bootleg whiskey" since he was twelve years old; that he was then thirty-seven years of age; that on the day he was arrested he had been drunk for two or three weeks; that he had been arrested a hundred or a hundred and fifty times for being drunk. He stated he did not know if he had talked to Judge Dale on July 6, 1966, when he was in jail; that he made no willful or intelligent waiver of his constitutional rights; that he did not willfully and knowingly waive his constitutional rights to the presence and assistance of a lawyer, or waive his rights to remain silent.
The record discloses that out of the hearing of his cellmates he confessed voluntarily to Judge Dale his participation in the armed robbery of one Mr. Ward who resided near Lucedale in George County. He told Judge Dale that he shot Mr. Ward with a 22-rifle and subsequently placed him under the seat of Mr. Ward's truck; that he drove the truck from Mr. Ward's home and left it abandoned on a local road, where it was ultimately found.
Just as the "horrible shadow" plagued Macbeth, so does the appellee have a Nemesis. Judge Dale testified that the appellee told him he was telling him this because "I just can't get away from that fellow. * * That bugger has been running me ever since that killing. * * * He gets in the bed with me, gets in the truck with me, gets on my shoulder, that's why I stay drunk trying to get away from him." Judge Dale in substance testified that in his opinion the appellee was not intoxicated but that he looked as though he had been on a drunk.
The record discloses that Judge Dale called his brother, Mr. C.H. Dale, who lives in Lucedale, and ascertained that a Mr. Ward had been killed. The record further establishes that Judge Dale then tried to call Circuit Judge Darwin Maples, but could not contact him. He then talked to the district attorney of the 19th District, Mr. Donald W. Cumbest, who asked for Mr. Dantin's name and telephone number, which Judge Dale furnished him.
Mr. Maurice Dantin, district attorney of the 15th Circuit Court District, who resides in Columbia, testified that Mr. Cumbest called him about 9:30 P.M. on July 6, 1966. He talked to Judge Dale first and then to the sheriff, John Homer Willoughby, and asked the sheriff to meet him at the jail. About 10:15, after the appellee had been taken from the bull pen down to the jailer's quarters, Mr. Dantin interrogated the appellee. The district attorney testified, and the record discloses, that he advised the appellee in detail as to his constitutional rights as set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), namely, of silence and the right to have an attorney present if he wanted one. Mr. Dantin advised him that "if he made any statement it not only could but would be used against him; that he could stop talking at any time he wanted to." All of this transpired prior to Mr. Dantin's interrogation of appellee concerning his participation in the armed robbery and the killing of Mr. Ward Mr. Dantin testified that he did not smell any alcohol on appellee and that appellee understood what was taking place and voluntarily gave the statements which were transcribed onto four sheets of paper by Mr. Dantin, each sheet of which appellee signed. He testified the appellee was not intoxicated when the statement was taken. The written confession was not introduced in evidence except to establish the signature of J.L. *175 Williams on each page, to which appellee's attorney agreed.
The trial judge held that the appellee was intoxicated at the time he was placed in jail as testified to by the officers who arrested him around eleven o'clock. He held that he was drunk when the deputy sheriff, Homer Sibley, saw him at twelve-thirty. The fact that appellee had an alcoholic problem was clearly shown. The trial judge ruled that too short a period of time had lapsed between his incarceration and the time he made his confession to conclude that the appellee was not still completely under the influence of intoxicating liquor. The trial judge held that he could "not say that his mind was free, that he knew what he was doing when he made this statement." The trial judge stated, "I can't say he effectively and affirmatively waived his constitutional rights. * * * I think the time is too short there and I will have to rule that in my opinion that his mind was such that he could not effectively waive his constitutional rights."
The court sustained the motion of appellee's attorney for a directed verdict and on March 10, 1967, a judgment was entered based upon a jury verdict of not guilty, in accordance with the court's instruction. From this judgment the state prosecutes this appeal.
There is but one error assigned, namely, that the trial court erred in the pre-trial suppression of a voluntary oral statement made by the appellee while incarcerated in the jail at Columbia Mississippi, in which statement, at his own solicitation, he related to Circuit Judge Dale that he and some others had in 1947 committed robbery, and that he had shot and killed a man named Ward in George County, Mississippi, in 1947.
A thorough and careful review of the record and the briefs of counsel convinces us the proof is sufficient to establish the fact that the trial judge did not abuse his discretion in excluding the oral confession made by the appellee to Judge Dale. See Annot., 69 A.L.R.2d 361-70 (1960). The record clearly shows that the appellee was in an acute, rampant state of intoxication equivalent to mania. In his deranged and psychotic mental imbalance the appellee could not have rationally, voluntarily and intentionally waived his constitutional rights guaranteed by the 5th Amendment to the United States Constitution, and by Article 3, Section 26 of the Mississippi Constitution.
Intoxication does not free a man from the responsibility for his violations of the law. The cases establishing this well known rule are legion and citation thereof is unnecessary. With reference to confessions made when intoxicated, we find in 20 Am.Jur., Evidence, section 525 (1939) at 449 this rule announced:
The fact that the accused is under the influence of liquor or drugs, which affect his recollection, does not make his confession inadmissible. The intoxicated condition of the accused at the time of making a confession does not, unless such intoxication goes to the extent of mania, affect the admissibility in evidence of such confession if it was otherwise a voluntary one, although the fact of intoxication may affect its weight and credibility with the jury. * * *
Our interpretation of the decision in Miranda v. State of Arizona, supra, convinces us that it has no application insofar as appellee's oral confession to Judge Dale is concerned. It is true appellee was in custody, but custodial interrogation is wanting. It was not interrogation, but solely his demented and voluntary act in beseeching Judge Dale to hear him, which produced his confession that he had robbed and killed a man "a long time ago." In Miranda, supra, it is pointed out that a confession voluntarily made is not prohibited by its rule, "although it was made to police officers, while in custody and in answer to an examination conducted by them." Custodial interrogation in the true meaning of the term did not *176 take place, since it was only at the imploration and insistence of appellee that Judge Dale listened to his confession and simultaneously asked appellee pertinent questions relating to the details thereof. His intoxication, with other factors, had produced mania, making it impossible for his intellect to comprehend what he was saying and doing.
This is the sole issue before us for the reason the purported written confession was never offered or received in evidence. There is no testimony by appellee or anyone else as to any detailed admission or confession which was made by appellee in his conversation with the district attorney, Maurice Dantin. It was stipulated and agreed between counsel representing the state and the appellee that the four pages of the written confession would be admitted in evidence expressly and "solely for the purpose of the signature" on each page thereof.
Just as Macbeth sought relief, so did the appellee here seek to "pluck from the memory a rooted sorrow, raise out the written troubles of the brain and with some sweet oblivious antidote cleanse the stuff'd bosom of that perilous stuff which weighs upon the heart."
The trial judge was justified in determining that the confession made by appellee was not voluntarily, knowingly and intentionally made. Ray v. State, 39 Ala.App. 257, 97 So.2d 594 (1957); Vinzant v. State, 28 Ala.App. 220, 180 So. 736 (1938); Smith v. State, 25 Ala.App. 297, 145 So. 504 (1933); Lindsey v. State, 66 Fla. 341, 63 So. 832, 50 L.R.A.,N.S., 1077 (1913); Burns v. State, 188 Ga. 22, 2 S.E.2d 627 (1939); State v. Hogan, 117 La. 863, 42 So. 352 (1906); State v. Alexander, 215 La. 245, 40 So.2d 232 (1949); Ritchie v. State, 164 Tex.Cr.R. 38, 296 S.W.2d 551 (1956).
Therefore, the judgment of the trial court, based on the verdict of the jury of not guilty of armed robbery, is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, JONES and INZER, JJ., concur.