312 So.2d 15 (1975)
Melvin Lamar ROBINSON
v.
STATE of Mississippi.
No. 48436.
Supreme Court of Mississippi.
May 5, 1975.
*16 H.W. "Sonny" Jones, Jr., Meridian, for appellant.
A.F. Summer, Atty. Gen., by Vera Madel Speakes, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, INZER and WALKER, JJ.
INZER, Justice:
Appellant Melvin Lamar Robinson was indicted, tried and convicted in the Circuit Court of Lauderdale County for the crime of burglary. He was sentenced to serve a term of four and one-half years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
At about 1 A.M. on April 16, 1974, the police of the City of Meridian discovered that Mooney Furniture Exchange had been burglarized. Mr. Mooney, the owner, was called to the scene. He testified at the trial that when he closed the store on the preceding afternoon it and the safe in the store were locked. When called by the police, he went immediately to the store and found the back door had been pried open and numerous articles had been taken from his store. The safe had been peeled and broken open and some articles taken therefrom. He later identified some of the items taken from his store at the police station. The Police Department of the City of Meridian had information that appellant had escaped from the State Penitentiary, was in the area, and was driving a white Chevelle automobile. They also had information that caused them to suspect that appellant had been involved in several burglaries that had been committed in the city, including the Mooney burglary. On the afternoon of April 17, when city patrolman Thomas came on duty, he was advised by his superior of these facts and told to be on the lookout for Robinson and the automobile. An automobile answering the description came out of a parking lot at a fast rate of speed. He stopped the car and found that it was being driven by a brother of the appellant. When questioned, the brother told Thomas that appellant was at the Blanks Motel. Thomas and Officers Milburn, Hattaway and Griffin proceeded to the motel where they located appellant in Room 6. They knocked on the door and it was opened by another brother of the appellant. They entered the room and found appellant, whom they arrested as an escaped convict. He was immediately handcuffed. The officers made a partial search of the room and observed some watches on the dresser. Appellant was then carried to the police station by two of the officers. The other officers continued the search of the room. They found numerous items of jewelry hidden in a mattress. A search was made of the attic of the room and there they found some money and a crow bar, which was later identified by Mooney as having been taken from his store.
Later that night, appellant, after having been warned of his Miranda rights, confessed to breaking into the Mooney Furniture Exchange. His statement was reduced to writing and he signed it.
Prior to trial appellant filed a motion to suppress the confession and the evidence obtained as a result of the search. It was alleged that the confession was not freely and voluntarily made and that the evidence *17 was the result of an illegal arrest and an illegal search. The court after conducting a full-blown hearing on the motion, found that the motion was freely and voluntarily given and that the arrest and search were valid.
On appeal the appellant urges that the arrest without a warrant was illegal, that the search of his room without a warrant was likewise illegal, and that his confession was not freely and voluntarily given.
There can be no question as to the validity of the arrest. The appellant was an escaped convict and as such, the officers had not only the right, but the duty, to arrest him at any time without a warrant.
Insofar as the confession is concerned, the evidence on behalf of the state established that appellant made the confession after being fully advised of his Miranda rights and after having signed the waiver of those rights. All the officers who were present at the time the statement was made testified that no threats, promises or hope of reward were made. Appellant testified that on the day in question he had been taking a nerve depressant called qualudes and he did not remember signing the waiver of his rights or signing the statement. However, appellant said he did remember that the officers told him that if he confessed, his brothers would be released. Four prisoners who saw the appellant in the jail that night testified. They described his condition as "looking like he had been on a bad trip," "shaking," "pretty well drunk," and "acting strange." The officers who saw appellant that night testified that although appellant appeared to be nervous, jittery, and a little agitated, he was coherent and appeared to understand what he was doing. We find no merit in appellant's contention that his confession should have been excluded because he was under the influence of drugs at the time he confessed. The test is as stated in State v. Williams, 208 So.2d 172 (Miss. 1968).
The fact that the accused is under the influence of liquor or drugs, which affect his recollection, does not make his confession inadmissible. The intoxicated condition of the accused at the time of making a confession does not, unless such intoxication goes to the extent of mania, affect the admissibility in evidence of such confession if it was otherwise a voluntary one, although the fact of intoxication may affect its weight and credibility with the jury.
(208 So.2d at 175).
The trial court was justified in finding from the evidence that the confession was freely and voluntarily given and was admissible in evidence.
Appellant next urges that even though his arrest was legal, the search of his motel room without a warrant went beyond the scope of a limited search incident to arrest and the trial court was in error in failing to suppress the evidence obtained by the search. Appellant cites and relies upon the following statement by the Supreme Court of the United States in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969):
There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs  or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The `adherence to judicial processes' mandated by the Fourth Amendment requires no less.
(395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694).
Appellant points out that the crowbar introduced in evidence was found in the attic after he had been arrested, handcuffed and taken to the police station. Other items testified to by the officers *18 were found either in the dresser drawers or concealed in the mattress. The state urges that appellant does not have standing to object to the warrantless search because it is not shown that it was appellant's room that was searched. However, the testimony does establish that appellant was in possession of the room that was searched. We are of the opinion that the real question is whether the warrantless search is reasonable in view of the fact that appellant was an escaped convict. There can be no doubt that when appellant was confined to the penitentiary his usual array of federal and state constitutional rights were materially restricted. This is especially true as to his Fourth Amendment rights. It is well settled that the prison authorities may subject an inmate to intense surveillance and search unimpeded by the Fourth Amendment barriers. Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). It is likewise certain that a prison cell is not a place where the occupant can expect privacy or a place where he can expect to be free from search and seizure unless accompanied by a warrant.
The question then arises was the abridgment of the appellant's Fourth Amendment rights altered when he escaped from prison? His escape certainly did not give him any right to expect that he would be free from arrest without a warrant or that he could expect privacy in any place that he might be found. While we have not found any case involving the warrantless search of an escaped convict, there are many cases involving warrantless searches of parolees. The courts generally hold that although an inmate is released on parole, the parole authorities may subject him, his home and his effects, to inspection and search as may seem advisable to them. In People v. Hernandez, 229 Cal. App.2d 143, 40 Cal. Rptr. 100 (1964), that court, after holding that a parolee was subject to have his person, home and effects searched by the parole officer without a warrant said:
If this constitutional fact strips him of constitutional protection against invasions of privacy by his parole officer, the answer is that he has at least as much protection as he had within the prison walls. He did not possess this guaranty in prison and it was not restored to him when the gates of parole opened.
(40 Cal. Rptr. at 104).
In Beck v. Beck, 36 Miss. 72, (1858), this Court had before it the question of whether an escaped convict could maintain a suit in chancery. The statute at that time suspended all civil rights of persons sentenced to the penitentiary, "during the term of such imprisonment." It was contended that since appellant had escaped long before he brought suit, he was no longer in prison and the statute did not apply. In answer to this contention, this Court said:
The replication shows that the appellant had escaped from the penitentiary before the institution of the suit, and before the expiration of his term of imprisonment. He was, therefore, in law still in confinement, and incapable of exercising any civil rights. It is absurd to suppose that he is entitled to any exemption from the disability imposed by the statute, by reason of his escape from the penalty of the law, and to which he is subject to be restored whenever he is within reach of the proper officers of this State.
(36 Miss. at 74).
It follows that appellant's Fourth Amendment rights were no greater as an escapee than they were while he was within the confines of the penitentiary. He had lost his constitutional protection against the invasion of his privacy and had no standing to object to a search of his room and his effects by the officers. We hold that the search of his motel room and *19 his effects was not unreasonable and that the fruits of the search were admissible in evidence.
After a careful review of the record in this case, we find no reversible error, and for the reasons stated this case should be and is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, SMITH, ROBERTSON, SUGG, and BROOM, JJ., concur.